IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 5:21-CR-09 |
| v. ) | |
| ) | |
| BRETT DONOVAN BUSSEY, ) | |
| ) | |
| Defendant. ) | |

**REPLY TO GOVERNMENT RESPONSE IN OPPOSITION TO MOTION FOR IDENTIFICATION OF THE SPECIFIC DOCUMENTS WHICH THE GOVERNMENT EXPECTS TO INTRODUCE IN ITS CASE IN CHIEF AT TRIAL**

Brett Bussey, one of the Defendants herein, by and through the undersigned counsel, files his Reply to the Government Response, doc # 557, to his Motion for Identification of the Specific Documents Which the Government Expects to Introduce in its Case in Chief at Trial and respectfully shows the following:

The government claims that Mr. Bussey's Motion for Identification requests that the government turn over trial exhibits before pretrial motions, hearings, or pretrial conferences. Doc # 557, p. 1. Mr. Bussey does not make that claim in his moving papers.

The government next contends, in part, that Mr. Bussey's Motion for Identification should be denied because of the government's assistance to defense counsel. Doc # 557, p. 2-6. As shown below, not only has the

1

government engaged in piece meal discovery for a year and 5 months, but its efforts at assistance have been made in an analog fashion in a digital world.

### A. The Indictment Does Not Provide Mr. Bussey a Roadmap for Discovery.

First, the government contends the indictment is a helpful tool to assist defense counsel in identifying key evidence and events. *Id*. at 2-3. The charging document belies that contention. The indictment is 50 pages, spans 6 years, 5 federal districts and 3 foreign countries. Doc. # 3, at 3. As to Mr. Bussey, the indictment broadly alleges a conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349 (count 1), mail fraud in violation of 18 U.S.C. § 1341 (counts 4-7), conspiracy to engage in forced labor in violation of 18 U.S.C. § 1594 (count 8), conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (count 53), and witness tampering in violation of 18 U.S.C. § 1512 (count 54).

The indictment alleges on pages 6-12 the defendants and their supposed roles in the conspiracy. With respect to Mr. Bussey, the indictment alleges that he and codefendant Maria Leticia Patricio filed fraudulent I-129 Petitions for Non-Immigrant Workers to bring foreign workers into the United States under the H-2A program. Doc # 3, p. 11, ¶ 33, p. 12, ¶ 35.

The indictment then alleges that the following assisted Mr. Bussey in filing fraudulent petitions:

- Codefendant Juana Ibarra Carrillo, the daughter of codefendant Delia Ibarra Rojas, p.9, ¶ 26,

- Codefendant Donna Rojas, also Delia Ibarra Rojas' daughter, p. 10, ¶ 27,

- Codefendant Margarita, Maggie, Rojas Cardenas, also the daughter of Delia Ibarra Rojas, p. 10, ¶ 28, and

- Linda Jean Facundo, p. 12, ¶ 34.

The indictment does not inform how those individuals assisted Mr. Bussey in filing fraudulent petitions.

The indictment then identifies certain codefendant associates of Mr. Bussey:

- Juan Francisco Campos, an associate of the Rojas family, p. 11, ¶ 29,

- Rosalva Garcia Martinez, Delia Ibarra Rojas' niece, p. 11, ¶ 30, and

- Carla Yvonne Salinas, who is alleged to have recruited and transported foreign workers, p. 12, ¶ 37.

However, other than Ms. Salinas, there is no indication how those individuals were associates of Mr. Bussey in a criminal conspiracy.

Count one of the indictment alleges a conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349. *Id.* p. 13 – 31. The government alleges that the scheme to defraud was executed by means of materially false and fraudulent pretenses, representations and promises with the object to make money in part by mailing fraudulent petitions, p. 14, ¶¶ 39-40, defined earlier to be I-129 petitions. *Id.* p. 4, ¶ 4.

The indictment alleges that it was part of the conspiracy that the conspirators located in the United States would prepare and mail fraudulent I-129 petitions. *Id.* at p. 15, ¶ 45.

Counts 4 through 7 charge Mr. Bussey with mail fraud in violation of 18 U.S.C. § 1341. Paragraph 66 alleges that it was part of the scheme to defraud to complete I-129 petitions with false and fraudulent information for nonimmigrant H-2A visas, obtain fraudulent signatures and fake documents for purported employers, and without authority and with intent to defraud and mail the false and fraudulent petitions to the government for processing. *Id.* at p. 32-33, ¶ 66.

Count 53 of the indictment alleges a money laundering conspiracy count in 18 U.S.C. § 1956(h) with the specified unlawful activity consisting of conspiracy to commit mail fraud, conspiracy to commit forced labor both with funds that were proceeds of that activity and with the intent to

promote the specified unlawful activity. *Id.* at 41-44. The government then sets forth 22 alleged money laundering activities, none of which implicate Mr. Bussey. *Id.*

Finally, count 54 alleges that Mr. Bussey attempted to corruptly persuade a grand jury witness to lie before the grand jury.

The claim that this sprawling document provides a roadmap for discovery is not accurate.

### B. The Government's Discovery Production.

The government then details the incredible volume of discovery in this case, including records and devices from search warrants and over 250 electronic devices. Doc # 557, p. 3 – 4. The government admits that it has produced over 15 terabytes of discovery and acknowledges that "the discovery is massive." *Id.* at p. 4. It is generally estimated that one terabyte contains 75 million pages. See *eDiscovery Best Practices: Perspective on the Amount of Data Contained in 1 Gigabyte*, ediscovery.co/ediscoverydaily/electronic-discovery/ediscovery-best-practices-perspective-on-the-amount-of-data-contained-in-1-gigabyte/. The government discovery disclosures have continued through February 2023, more than 17 months after indictment. Doc # 549, p. 2-3.

## C. The Government's Assistance to the Defense.

The government claims that the discovery is organized by the seizing and producing agency, and by individual defendant. Doc # 557, p. 4. But that begs the question – the organization consists of an index that is 3,776 pages and, much of the discovery has been produced within the last few months because the government conducted massive searches at the time of arrest, leading to delayed productions as detailed in Mr. Bussey's Motion to Identify. Doc # 549, p. 2 – 3.

The government's claim of reverse proffers "that outlines the evidence" against each defendant overstates the matter. *Id*. At least with respect to Mr. Bussey, the reverse proffer, made by the government for the purpose of convincing Mr. Bussey to enter a guilty plea, consisted mainly of playing excerpts of undercover recordings where the government informant and Mr. Bussey engaged in far-fetched, alcohol fueled conversations.

The government also claims it is working with the Department of Justice elitigation team to expedite discovery. *Id*. at 5 – 6. This is the first time that counsel for Mr. Bussey has heard of this effort by the government; however, it is notable that this is occurring almost a year and a half after indictment.

## D. Argument and Citation of Authority.

The government erroneously argues that Mr. Bussey claims that Federal Rule of Criminal Procedure 16(a)(1)(E) requires the government to provide a list of the documents which it intends to use in its case-in-chief at trial, in addition to producing the documents themselves. Doc. # 557, pp. 6-7. Mr. Bussey does not make that argument in his Motion, rather, he contends that, based on the policies underlying Rule 16 and principles of fairness, other courts have found it within their authority to direct the government to identify the documents which it intends to rely upon in its case-in-chief at trial. *See* Doc # 549, p. 4 (quoting *United States v. Giffen*, 379 F.Supp.2d 337, 344 (S.D.N.Y. 2004); *United States v. Turkish*, 458 F.Supp. 874, 882 (S.D.N.Y.1978); *United States v. Musick*, 291 Fed.Appx. 706, 723 (6th Cir. 2008).

The government cites the *Scrushy* case out of the Northern District of Alabama in support of its opposition. Doc # 557, at p. 7-8. However, the Court in *Scrushy* recognized that the government had "provide[d] at least a partial specification of the documents it considers relevant to the charges for trial." 2004 WL 483264, at *2. Here, the government's 3776-page index regarding the mass of discovery which it has made available to the defense

7

is a far cry from the specification of documents it considers relevant to the charges for trial.

The government also cites several cases out of district courts within the Eleventh Circuit, doc # 557, at p. 7 -8, not particularly helpful to its position. In *Carranza*, *id.* at p. 7, Judge Thrash, "**DIRECT[ED]** the government to assist Defendant in focusing his investigation (if it has not already done so) by providing an index or other searchable format to the recorded phone calls pertaining to him and the documents relevant to his defense." 2004 WL 483264, at *4 (N.D. Ga. Aug. 21, 2007) (Emphasis in original). The district court took that action to balance the premature disclosure of government work product against the unfairness inherent in the voluminousness of the production. *Id.* Thus, the district court granted the motion for particularized discovery to the limited extent ordered. *Id.* In this case the government has not identified relevant documents and the phone intercepts are not in a searchable database.

In *United States v. Martin*, 2018 WL 3617316, at *1-2 (M.D. Fla. May 21, 2018), the district court recognized that it had the discretion to order particularized discovery from the government, but that given the government's production of relevant hot documents and a searchable database of documents, it would decline to do so. Again, here, the

8

government has not identified a universe of hot documents, and, apparently, has only recently engaged litigation support.

In *Bickers*, a case of only 2 million documents, the district court declined to order the government to produce an exhibit list, due in part to the government's providing defense counsel with a computer program to electronically search the discovery database and access to the government's litigation support. *United States v. Bickers*, 2019 WL 5587050, at *3-4 (N.D. Ga. Oct. 30, 2019). Again, here, the government has just announced that it has litigation support.[1]

There is at least one case in which the court initially permitted the government to engage in the same types of discovery as the prosecution has here, and the results are instructive. Specifically, in *United States v. Graham*, 2008 WL 2098044 (S.D. Ohio May 16, 2008), the court ultimately decided to dismiss the indictment because of a speedy trial violation caused by discovery delays. *Id.* at *8. In its dismissal order, the court reflected on how the government could have avoided such delays. First, it found that, "like a restless volcano, the government [had] periodically spew[ed] forth new discovery, which add[ed] to defense

---

[1] Given that the government has only recently retained the services of litigation support, and that the defense is now using a discovery coordinator, it may be useful for the Court to hear from the perspective of those professionals as to the content and volume of discovery at issue.

9

counsels' already monumental due diligence responsibilities." *Id.* at *5. Further, the government's discovery was often "tainted or incomplete." *Id.* As a result, the court concluded that in such a matter of "complexity and magnitude, the government cannot be permitted to remain inert in the face of large volumes of unsorted discovery materials." *Id.* at *6. Just two months ago, in this case, the government produced massive amounts of discovery to the defendants. Doc # 549, at p. 3. Like in *Graham*, the government in this case continues to "spew forth new discovery" like "a restless volcano."

The government discusses *United States v. Nachamie*, 91 F.Supp.2d 565 (S.D.N.Y. 2000), in arguing that *Upton*, *Turkish*, and *United States v. Poindexter*, 727 F. Supp. 1470 (D.D.C. 1989), relied on by Mr. Bussey, were wrongly decided. *See* Doc # 557, p. 8-9 (quoting *Nachamie*, at 569, 570). However, the government overlooks Mr. Bussey's citation to *Giffen*, doc # 549, at p. 4, a case out of the same district court as *Nachamie,* which four years later held that:

> The district court's decision in *Nachamie* about the scope of Rule 16 conflicts with decisions by other courts in this circuit. *United States v. Lino*, No. 00 CR. 632(WHP), 2001 WL 8356, at *19 (S.D.N.Y. Dec.29, 2000). At least two district courts have

10

held that based on the policy concerns of Rule 16 and principles of fairness, it is within a district court's authority to direct the Government to identify the documents it intends to rely on in its case in chief. *See United States v. Upton*, 856 F.Supp. 727, 748 (E.D.N.Y.1994) (directing prosecution to "provide a list of all documents to be referred to or relied upon by government witnesses"); *United States v. Turkish*, 458 F.Supp. 874, 882 (S.D.N.Y.1978)(directing prosecution "to identify to the defendants those documents it intends to offer, or to use or to refer to in connection with the testimony of any witness, on its case in chief").

*Giffen*, 379 F.Supp.2d at 344.

The government's refusal to identify the Rule 16(a)(i)(E) categories of documents within its voluminous electronic production runs counter to those purposes and causes prejudice to Mr. Bussey. The discovery challenges here are of the government's making and fit squarely with the issues addressed and resolved in a case cited in Mr. Bussey's Motion for Identification, doc # 549, at p. 7, but not addressed in the government's response - *United States v. Anderson*, 416 F. Supp. 2d 110 (D.D.C. 2006), where the court granted similar requests. In *Anderson*, the government

11

produced hundreds of boxes of documents and the defendant moved, under Rules 16 and 12(b)(4)(B), to request that the government identify which documents the government planned to use at trial. The court noted that the government's "open file" policy did not satisfy its disclosure obligations and ordered the government to identify which documents the government intended to use at trial. *Id.* at 112, n.1.

Next, the *Anderson* court considered and granted the defendant's request for identification of documents responsive to Rule 16(a)(1)(E)(ii) to be used at trial in the government's case-in-chief. Just as Mr. Bussey asserted, the defendant there argued that unless the government "specifies *which* of the thousands of items produced it will use at trial, he will be unable to prepare an adequate defense." *Id.* at 113. (Emphasis in original) The Court agreed, in part because of the enormous volume of material produced and because "requiring defendant to peruse each page of the materials at issue here-in effect, to duplicate the work of document review presumably done by the government—would materially impede defendant's counsel's ability to prepare an adequate defense." *Id.* at 114. The court in ordering early identification of documents noted that "the government has spent at least three years preparing, which is likely to involve entire novel

12

issues of law, and which implicates a universe of potential evidence (on the order of 500,000 pages worth) . . ." *Id.*

Finally, the government claims that the text of Rule 16(a) does not require it to identify case-in-chief materials citing *United States v. Perraud*, No. 09-60129-CR, 2010 WL 228013, at *9 (S.D. Fla. Jan. 14, 2010). Doc # 577, p. 9 – 10. However, the court in *Perraud* explained that the discovery rules do "not endow the government with the right to drown a defendant in a sea of irrelevant, or even tangentially relevant, documents in an effort to hide the few particularly relevant documents from a defendant in the hope that trial will ensue before the defendant discovers such materials."

In *Perraud*, where the government made a voluminous electronic database available to the defendants, the court concluded that the minimum, plain-text requirements of Rule 16(a) were insufficient in that situation. In considering what relief would be appropriate, the court found comfort in the fact that, by the time the court considered the defendants' motion, the government had already provided those defendants with far more information than that provided here. For instance, there, the government had already (1) explained that it produced a database of three million documents "*only in an abundance of caution*" to enable defendants to consider for their use (thus not for the government's use at trial), (2)

13

narrowed the production to approximately **5,000** documents of which the government indicated "*may be relevant to the charges*" against the defendants because those records contained defendants' names, and (3) indicated that it believed it had "*directed [d]efendants to all exculpatory evidence.*" *Id.* at *12 (emphasis added). The government also had conceded that only 9 of 178 categories of documents listed on its index "could remotely be related to the instant case" and explicitly identified those categories. *Id.* at *6-7. Here, the government has provided no such similar assistance to Mr. Bussey.

Here, the government's scattershot production does not disclose or identify any Rule 16(a)(1) materials, instead it forces the defense to manually review the government's massive production. Because the government has not met its Rule 16(a)(1) obligations, this Court should order the Government to disclose these materials. *See United States v. Lee*, 573 F.3d 155, 161 (3d Cir. 2009) ("When a party fails to comply with Rule 16, the district court is empowered to order that party to comply with the Rule, grant a continuance, exclude the evidence, or enter other just relief." (Citing Fed. R. Crim. P. 16(d)(2)).

**E. Conclusion.**

Based upon all of the reasons and authorities cited above, Mr. Bussey respectfully requests that this Court grant his Motion for Identification of the Specific Documents Which the Government Expects to Use in its Case in Chief at Trial.

This 24th day of April, 2023.

>  */s/Thomas A. Withers, Esq.*
> Attorney Bar Number: 772250
> Attorney for Brett Bussey
> Gillen, Withers & Lake, LLC
> 8 East Liberty Street
> Savannah, Georgia 31401
> Telephone: (912) 447-8400
> Email: twithers@gwllawfirm.com

CERTIFICATE OF SERVICE

The undersigned certifies that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this court.

This 24th day of April, 2023.

> /s/Thomas A. Withers, Esq.
> Attorney Bar Number: 772250
> Attorney for Brett Bussey
> Gillen, Withers & Lake, LLC
> 8 East Liberty Street
> Savannah, Georgia 31401
> Telephone: (912) 447-8400
> Email: twithers@gwllawfirm.com