IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 5:21-cr-009-20 |
| | ) | |
| BRETT DONAVAN BUSSEY, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS AUGUST 14, 2019, SEARCH WARRANT
DIRECTED TO MICROSOFT (DOC. 637)**

The United States moves the Court to deny Bussey's motion for the Court to conduct a *Franks* hearing and to suppress evidence. The search warrant was based on probable cause and there were no material omissions or misstatements that justify a *Franks* hearing. Investigators relied in Good Faith on the warrant and suppression should be denied.

**1.      General Standards Relating to Search Warrants:**

Standing:

The Fourth Amendment "protects people, not places." *Katz v. United States*, 389 U.S 347, 351 (1967). A defendant has standing to challenge the admission of illegally obtained evidence only if there is a personal violation of a legitimate expectation of privacy. The expectation must be both subjectively held and objectively reasonable. *Id.*

Probable Cause:

"Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350 (11th Cir. 1999) citing *United States v. Gonzalez*, 940 F.2d 1413 (11th Cir. 1991). "Probable cause is a fluid concept-turning on the

assessment of probabilities in particular factual contexts." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).  The issuing judge is entitled to rely on the opinions and conclusions of experienced law enforcement affiants, who may ascribe entirely different meaning to seemingly innocent conduct because of their experience and training.  *United States v. Harden*, 2023 WL 3933373 (SDGA 2023), internal citations omitted. "Innocent behavior frequently will provide the basis for a showing of probable cause."  *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983); *United States v. Robinson*, 62 F.3d 1325, 1331 n.9 (11th Cir. 1995).  As noted in *United States v. Gonzales,* 969 F.2d 999 (11th Cir. 1992), "[t]hese maneuvers may be open to innocent explanations,…[but] [c]onduct innocent to the eyes of the untrained may carry entirely different messages' to the experienced or trained observer.")  The opinions and conclusions of an experienced agent may properly be considered as a factor in the totality of the circumstances when evaluating whether probable cause exists.  *Id.*

    <u>Deference should be given</u>:   There is a deferential review of probable cause in a suppression context.  The reviewing court should not review the affidavit *de novo* for probable cause.  *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).  The court's task is "simply to ensure that the magistrate [judge] had a substantial basis for… concluding that probable cause existed." *Id.*  The practical nature of evaluating probable cause in a search warrant application "justifies great deference' upon review and calls for upholding the judge's findings even in marginal or doubtful cases." *Id.*, see also *Illinois v. Gates*, 462 U.S. 213 (1983), *United States v. Brundidge*, 170 F.3d 1350 (11th Cir. 1999).  Defendants have the burden of proof to establish the warrant was defective.  *United States v. Harden*, 2023 WL 3933373 (SDGA 2023) citing *United States v. Gonzalez-Renera*, 2021 WL 9758616, at *3 (NDGA 2021).

**2.    Bussey has failed to establish standing to contest the seizure of evidence.**

Although Bussey moves to suppress evidence related to the search of Information Associated with Email Addresses that is Stored at Premises Controlled by Microsoft, he fails to address his standing to suppress evidence that was seized from Microsoft. Therefore, absent some showing of a subjective expectation of privacy that is objectively reasonable, the Court should deny his motion to suppress.

**3.    There was probable cause to search the target location.**

On August 14, 2019, upon application for a warrant submitted by HSI SA Anthony Miranda, this Court issued a search warrant to search Information Associated with Email Addresses that is Stored at Premises Controlled by Microsoft. Exhibit 1 (Application); Exhibit 2 (Attachments); Exhibit 3 (Affidavit); Exhibit 4 (warrant with Attachments). As noted in the signed warrant, **this Court specifically found probable cause** to search and seize the property described in the affidavit and attachments. Exhibit 4. The Court should not disturb the Court's findings.

As noted in Attachment A, the United States sought information associated with the following accounts:

Brett.bussey1201@outlook.com;

Aga.mendoza@outlook.com;

Patricio_260@hotmail.com;

inezstrickland@outlook.com;

lrodmex@hotmail.com;

vmendoza17@outlook.com;

that is stored at premises owned, maintained, controlled, or operated by Microsoft, a company headquartered at 1 Mircrosoft Way, Redmond, WA 98052. Exhibit 2.

The 42-page affidavit outlined sufficient probable cause that a crime was committed and that evidence would probably be found at that location. The affiant is a seasoned law enforcement agent with over a decade of experience with specialized knowledge about the H-2A Visa Program, Human Trafficking, and the crimes being investigated. Exhibit 3, ¶¶ 1-2. The affiant provided an overview of the H-2A program. As noted in paragraphs 7-24, the H-2A Visa program is a lawful program that allows farmers to use migrant workers to work in approved agricultural farms for a specific time period, conditioned on certain hard line rules. Truthful paperwork must be submitted to and approved by the government. The paperwork is submitted and signed under penalty of perjury. The program requires workers to work at identified pre-approved locations. The workers must be provided transportation to and from the approved locations. The workers must be housed in suitable, pre-approved housing. The workers cannot be charged a fee to apply for the program. Once in the US, the workers must work in accordance with the pre-approved contract and must be paid US wages in accordance with the contract. Workers cannot be sold or transported to non-approved locations. If a migrant worker absconds, the employer has a duty to report the absconder. Workers must be provided with transportation back to the home country at the conclusion of the time period. There are other requirements outlined in the affidavit. *Id.*

The affiant outlined the overview of the criminal investigation. *Id.* ¶¶ 25-130. The affidavit outlined various investigative techniques that were employed, some targets of the investigation, target email accounts to be searched, specialized knowledge related to labor trafficking organizations and why agents believed there was probable cause that evidence would be found at the particular locations. *Id.* There was probable cause that crimes were being committed.

Since 2018, the Department of Homeland Security Investigations (HSI), the Diplomatic Security Service (DSS), the Federal Bureau of Investigation (FBI), and the United States Postal

4

Service (USPS) has been investigating a transnational criminal organization (TCO) for fraudulently using the H-2A visa program to smuggle migrant workers from other countries into the United States under the pretext of being agricultural workers. Members of this conspiracy, lie, cheat, and steal from the United States by submitting false paperwork; and members lie, cheat, steal, and exploit migrants looking for a better life. ¶¶ 25-26.

Agents used a number of investigative techniques to gather evidence and to justify assertions made in the affidavit, including: reviewing documents associated with the Department of Labor (DOL), USCIS Immigration, and the Department of State (DOS); they conducted a financial analysis, reviewed social media records, interviewed cooperating individuals and witnesses; and conducted physical surveillance. § 25.

Through the investigation, agents identified a number of conspirators who served in different capacities in the criminal organization. Although serving in different capacities, agents observed and documented a *modus operendi*. Many members of the conspiracy submitted forms to the government seeking H-2A visas for foreign nationals to work at particular farms for particular time frames. Dozens of these documents were reviewed and investigated. Investigators determined that the documents were inaccurate, incomplete, and contained information that agents determined to be false. For example:

-David Harrell submitted 42 petitions that contained false information. Additionally, DOS has refused 744 visas associated with David Harrell's Petitions because of inaccurate or incomplete information. ¶ 40.

-David Harrell (like many other conspirators) claimed the workers would work at a particular farm, Shuman Farms, "harvesting sweet potatoes" for the owner "Roger Burns." However, when the investigators interviewed the true farm owner, Mark Shuman, Shuman denied

5

knowing Roger Burns, and said his only crop was onions, not sweet potatoes. This is one of many examples of conspirators who listed nominee owners (or fake owners) for farms, claiming the need for H-2A workers to harvest he crops, when the reality was the farm listed had nothing to do with the H-2A request. The conspirators were submitting fake documents to trick the government to allow H-2A workers to come to the US, so the conspirators could exploit the migrants for profit. ¶¶ 40-43.

-Sherry Widner, another conspirator, in a similar fashion, submitted 10 false petitions seeking H-2A workers. Additionally, the DOS has refused 535 visas associated with Sherry Widner's Petitions because of inaccurate or incomplete information. ¶ 44.

-Widner, **acting as an agent**, submitted paperwork seeking 74 workers. It listed the employer as "MG." The form stated that the workers would work at 816 GA HWY 56, West, Lyons, GA. To shown need for workers, Widner, **as agent** submitted a letter on behalf of Cowart Farms, bearing the same address, purportedly signed by Jim Cowart, the owner. The government emailed Widner because the petition contained errors. Widner responded to the notice with corrections. Investigators interviewed Anthony Cowart, the real owner of Cowart Farms, who stated that he did not know the "employer" listed on the paperwork, and that he did not use Widner as an agent. Cowart reviewed the petition and said it was fake. ¶¶ 44-47.

-Abbie-Marie Musgrove, used the same scam. Musgrove submitted 2 petitions with fraudulent information. In addition, the Department of State refused 221 visas associated with Musgrove because the petitions were inaccurate or contained incorrect information. ¶ 49

-Musgrove, **acting as an agent**, submitted petitions, listed N.C-G as the employer, and requested 74 workers to work at 272 Oak Hill, Road, Cairo, GA. To show the need for workers, a letter was submitted on behalf of Hopkins Farms, signed by Carroll Hopkins, owner. The

government emailed Musgrove a notice of deficiency and Musgrove responded with "corrected" information.  Investigators interviewed Carroll Hopkins who said she did not know N. C-G and has never filed for H-2A workers.  Further she said she never signed a letter of intent.  ¶¶ 48-51.

These examples demonstrate the manner and means of the conspiracy.  Agents submit fake paperwork to fool the government to send over migrate workers under the H-2A program.  The paperwork is fraudulent because it often contains forged letters, fake owners, and farm addresses without permission.  There are more examples outlined in this affidavit.

-See ¶ 52- H2A Services filed fake paperwork as an **agent** claiming Kevin Hendrix needed H-2A workers.  When later interviewed, Hendrix said he had not filed for H-2A workers since 2016 and never used H2A Services.  ¶¶ 52-58.

-See ¶ 59- H2A Solutions filed fake paperwork in a similar fashion, and again, investigators interviewed the true owner of the farm, who denied seeking any H-2A workers that year.  ¶¶ 59-65.

-See ¶ 66- Sylvia Williams, acting as an **agent** filed fake paperwork in a similar fashion, seeking H-2A workers to work at 107 Buckhead Rd., Baxley, GA.  Investigators learned that 107 Buckhead Rd., Baxley, GA, was not a farm, and no such address was registered in the county records.  ¶¶ 66-73.

-See ¶¶ 74-79.  In this instance, a conspirator, **acting as an agent**, again filed fake paperwork, including a forged letter.

-See ¶¶ 80-88.  In this instance, a conspirator, **acting as an agent**, again filed fake paperwork, including the place of housing and the type of work.  Investigators learned that H-2A workers were not housed where they were supposed to be housed, and they worked at a rock quarry, not the approved agricultural farm.

Like these other conspirators, Brett Bussey, served in a similar role in the conspiracy. He, like the other agents, submitted fake paperwork to the government, **as an agent**, to fool the government into issuing H-2A visas, so the workers could be exploited for profit. As outlined in the affidavit:

-Bussey submitted three petitions with fake information. In addition, the Department of State has refused 833 visas associated with Bussey's petitions because of inaccurate or incomplete information. ¶ 28.

-On January 28, 2019, Bussey, **as an agent**, submitted a form requesting 250 workers. One of the places of employment was listed as 224 Meadows Road, Alma, Georgia. To show the need for the workers, Bussey included a letter from "Cory Burnam" with the address of 224 Meadows Road, Alma, Georgia. The next week, the government emailed Bussey at [brett.bussey1201@outlook.com](mailto:brett.bussey1201@outlook.com), a notice of deficiency letter. Bussey responded by email (his same address) and supplied additional information. On April 3, 2019, investigators determined the owner of 224 Meadows Rd., Alma, Georgia, to be Katelyn Alderman, who had owned the property since July 2017. Investigators interviewed Alderman's husband, Aaron, who confirmed that Katelyn had nothing to do with the H-2A process and never ordered any workers. ¶¶ 89-93.

Bussey's participation in the scam was consistent with the other conspirators. Because of his previous employment with the Department of Labor, he knew some of the loopholes of the program and he exploited them, along with his co-conspirators:

-submit fake documents to US seeking workers;
-fool the government into sending workers;
-exploit workers by making them work at different locations;
-house them at different locations;
-charge them unlawful fees;
-pay them little if any money;
-sell them to others;
-and otherwise exploit them from money, hoping the government would not verify the

8

information on the petitions.

Bussey, as others, hoped the government would accept the paperwork if it checked all of the boxes. If it didn't, like other agents, he could attempt to hide behind the "I am only an agent," argument.

Bussey's manner and means, at times, mirrored other members of the conspiracy, including: Javier Mendoza (see ¶¶ 94-99), Inez Strickland (¶¶ 100-104), Laura Gomez-Morales (¶¶ 105-109), Veronica Mendoza (¶¶ 110-114), Monica Saaverda (¶¶ 115-119), and Bertha Martinez (¶¶ 120-124).

As outlined in the affidavit, all used emails to faclitate the conspiracy. Because this Court found probable cause, this Court should afford the finding great deference and deny Bussey's motion to suppress.

### 4.   There were no material misrepresentations or omissions in the Affidavit that negate probable cause or justify a *Franks* hearing.

Bussey attempts to supplement the record with copies of a petition and testimony by arguing that the agents intentionally misrepresented facts or intentionally omitted facts to mislead the judge into issuing a warrant; and that but for the material misstatements or omissions, the affidavit would lack probable cause. Doc. 637, pgs. 5-10. Not correct. In this case, there were no material misrepresentations by the government, nor were there any material omissions.

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court stated:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses must be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose

> impeachment is permitted- is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail, of course, is another issue.

*Franks*, 438 U.S. at 171-72. The burden of proof, by a preponderance of the evidence, is on the defense. *Id.* In this case Bussey must prove: 1) that the alleged misrepresentations or omissions were knowingly or recklessly made by the affiant, Agent Miranda, and 2) that the result of excluding the alleged misrepresentations and including the alleged omissions would have been a lack of probable cause for issuance of the warrants. *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990). Bussey has failed to meet the burden.

Bussey claims that the government misrepresents the penalty of perjury provision in the H-2A application paperwork. He argues: "the affidavit claims that the agent's certification contains a 'penalty of perjury' clause…." "It does not." In support, Bussey submitted Exhibit 1, an extremely redacted application wherein Bussey's signature is redacted from the penalty of perjury declaration. As noted in Exhibit 5 (attached), contrary to Bussey's argument, Bussey did sign under the "penalty of perjury" clause. It states:

> By my signature, I certify, swear, or affirm, **under penalty of perjury**, that I prepared this petition on behalf of, at the request of, and with the express consent of the petitioner or authorized signatory. The petitioner has reviewed this completed petition as prepared by me and informed me that all of the information in the form and the supporting documents, is complete and true, and correct.

It is signed by Brett Bussey. Exhibit 5, pg. 7.

Bussey argues that under the Code of Federal Regulations the duties of employer and agent differ significantly. Agents must rely on information provided by the employer; and employers must verify the information is accurate. The United States does not dispute this. And while the

10

Code of Federal Regulations (CFRs) provide rules on how forms must be completed and submitted; the agent's omission of the CFRs does not negate probable cause. As noted throughout the affidavit, this conspiracy involved different members who served in different roles. But many of the conspirators, including the agents, shared the manner and means. They submitted fake documents by email to the government to trick the government into issuing H-2A visas to migrant workers. Conspirators then exploited the workers. Whether one served as an "agent" as defined in the CFRs versus an "employer," is immaterial to whether evidence of a crime will probably be found in the email accounts. **It is without dispute that somebody prepared the documents with fake information and those documents were emailed to the government through the target email accounts. Whether the "agents," including Bussey, knew the documents were fake is a matter for the jury, not a motion to suppress.**

In a search warrant context, law enforcement agents are under no duty to disclose all facts and all laws related to the investigation. As noted by the affiant: "This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about the matter." Exhibit 3, ¶ 4. As noted above, the issue of whether to grant a warrant is whether "there is a fair probability that contraband or evidence of a crime will be found at a particular place." *Illinois v Gates*, 462 U.S. 213 (1983). In this case, there was probable cause that a crime took place. It is undisputed that at least 10 conspirators submitted fake documents to the United States to trick the government into issuing H-2A visas. It is undisputed that at least 10 conspirators used emails to submit the fake documents. While some people (including Bussey) may argue they did not know the documents were fake, investigators proved they were. Thus, it was probable that evidence of crime would be found in the email addresses outlined in the affidavit/application/ and warrant.

Because the issue is not Bussey's duties outlined in the CFRs, and the issue is not his knowledge of the crime, any omissions in this case were not material for a probable cause determination. Bussey fails to meet his burden to justify a *Franks* hearing, therefore, this Court should deny the request.

### 5. The Good Faith Doctrine Applies

Under the good faith exception, the Court will not suppress evidence obtained pursuant to a warrant unless (1) the issuing judge was knowingly misled by information the affiant knew, or should have known, was false; (2) the issuing judge "wholly abandoned his/her role;" (3) the application was so lacking indicia of probable cause to render reliance upon it unreasonable; or (4) the warrant was so facially deficient that reliance upon it was unreasonable. *United States v. Leon*, 468 U.S. 897, 923 (1984). The exclusionary rule is designed to deter unlawful police conduct. When law enforcement officers act in good faith and in reasonable reliance upon a judge's order, exclusion is not warranted because there is no unlawful conduct to deter. *United States v. Travers*, 233 F.3dd 1327, 1329 (11th Cir. 2000). Bussey presents nothing to suggest that the good faith exception would not apply in this case. Thus, even if errors were made in the issuance of the search warrant, the good faith exception apples and this Court should deny the suppression motion.

                                         Respectfully submitted,

                                         JILL E. STEINBERG
                                         UNITED STATES ATTORNEY

                                         *s/ E. Greg Gilluly Jr.*
                                         E. Greg Gilluly, Jr.
                                         Assistant United States Attorney
                                         TN019397

22 Barnard Ste. 300
Savannah, GA, 31401
912-652-4422