IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.            ) | CASE NO 5:21-CR-009 |
| ) | |
| MARIA LETICIA PATRICIO, ) | |
| ANTONIO CHAVEZ RAMOS, ) | |
| ENRIQUE DUQUE TOVAR, ) | |
| DELIA IBARRA ROJAS, ) | |
| JUAN FRANCISCO ALVAREZ CAMPOS, ) | |
| BRETT DONAVAN BUSSEY  ) | |

**THE UNITED STATES' COMBINED RESPONSE
IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS FOR MISJOINDER AND MOTIONS TO SEVER**

The United States files its combined response in opposition to the following pretrial motions to dismiss for misjoinder and motions to sever:

| Docket No. (Doc.) | Filing Defendant | Motion |
|---|---|---|
| 388 | Enrique Duque Tovar | Motion for Severance |
| 639 | Brett Bussey | Motion for Severance |
| 801 | Delia Rojas | Motion to Sever |
| 806 | Juan Campos | Motion to Dismiss for Misjoinder |
| 807 | Juan Campos | Motion for Severance |
| 808 | Maria Patricio | Motion to Sever |
| 812 | Antonio Chavez Ramos | Motion to Dismiss for Misjoinder |
| 813 | Antonio Chavez Ramos | Motion to Sever |

In a series of motions, Defendants Maria Patricio, Antonio Chavez Ramos, Enrique Duque Tovar, Delia Ibarra Rojas, Juan Alvarez Campos, and Brett Bussey seek to sever this case into multiple separate trials. Defendants Antonio Chavez Ramos and Juan Alvarez Campos also allege misjoinder and argue the Indictment

should be dismissed. Courts generally agree that an indictment should not be dismissed for misjoinder. *See e.g.*, *United States v. Damiani*, 2011 WL 7574628, at *21 (N.D. Ga. Sept. 23, 2011), *report and recommendation adopted,* 2012 WL 983726 (N.D. Ga. Mar. 20, 2012); *See United States v. Ervin,* 2011 WL 2551192, *4 (M.D.Ala. June 6, 2011) (*report and recommendation adopted*, 2011 WL 2551186 (June 27, 2011) ("[A]ny improper joinder of Defendants does not warrant the extreme remedy of dismissal of the Superseding Indictment."); *cf. United States v. Goodman,* 285 F.2d 378, 379 (5th Cir.1960) (finding that the proper relief for a misjoinder of offenses under Rule 8(a)[1] was not dismissal of the entire indictment but severance of the offenses for separate trials). Thus, Defendants motions to dismiss the indictment for misjoinder are properly denied. The correct potential remedy for misjoinder is severance. The United States respectfully submits that severance is not warranted in this case and the motions for severance are also properly denied.

## I.   Joint Trials Serve Important Interests.

Rule 14(a) of the Federal Rules of Criminal Procedure provides that if the joinder of defendants at trial "appears to prejudice a defendant . . . the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." While the decision to sever "lies within the district court's sound and substantial discretion," *see United States v. Lopez*, 649 F.3d 1222, 1236

---

[1] The Eleventh Circuit has noted that in certain cases, "the governing principles" for Rule 8(a) and Rule 8(b) "are the same." *United States v. Dominguez*, 226 F.3d 1235, 1239 (11th Cir. 2000).

(11th Cir. 2011), the court must "balance the rights of the defendants and the government to a trial that is free from the prejudice that may result from joint trials against the public's interest in efficient and economic administration of justice." *United States v. Pepe*, 747 F.2d 632, 649 (11th Cir. 1984). Indeed, "[j]oint trials play a vital role in the criminal justice system and serve important interests: they reduce the risk of inconsistent verdicts and the unfairness inherent in serial trials, lighten the burden on victims and witnesses, increase efficiency, and conserve scarce judicial resources." *Lopez*, 649 F.3d at 1233 (citing *Zafiro v. United States*, 506 U.S. 534, 537 (1993)).

## II. Defendants Indicted Together Are Tried Together, Unless The Defendant Meets A Heavy Burden Of Demonstrating Severance Is The Only Remedy For Actual Prejudice.

The general rule in the Eleventh Circuit is that "defendants who are indicted together are usually tried together." *United States v. Browne*, 505 F.3d 1229, 1268 (11th Cir. 2007). That rule "is even more pronounced in conspiracy cases." *Lopez*, 649 F.3d at 1234 (citing *United States v. Beale*, 921 F.2d 1412, 1428 (11th Cir. 1991)). "The exceptional circumstances justifying a deviation from the rule, however, are few and far between." *Lopez*, 649 F.3d at 1234. "The burden is on the defendant to demonstrate that a joint trial will result in specific and compelling prejudice to the conduct of his defense." *United States v. Schlei*, 122 F.3d 944, 984 (11th Cir. 1997) (internal marks and citation omitted). This is a "heavy burden" borne by Defendants. *Browne*, 505 F.3d at 1268. "To show compelling prejudice, a defendant must establish that a joint trial would actually prejudice the defendant and that a severance is the

only proper remedy for that prejudice—jury instructions or some other remedy short of severance will not work." *Lopez*, 649 F.3d at 1234 (citing *Zafiro*, 506 U.S. at 539–41).

## III. Defendants Have Not Met Their Heavy Burden Of Showing This Conspiracy Case Presents An Exceptional Circumstance That Warrants Service.

To be properly joined, "the offenses in question must constitute a series of acts or transactions. "'In the ordinary case, a rational basis for joinder of multiple counts should be discernible from the face of the indictment.'" *United States v. Azor*, 881 F.3d 1, 10 (1st Cir. 2017) (quoting *United States v. Natanel*, 938 F.2d 302, 306(1st Cir. 1991)). Put differently, "the propriety of joinder under Rule 8(b) is to be judged accordingto the language of the indictment, not according to the government's proof at trial." *United States v. Sutherland*, 656 F.2d 1181, 1190 (5th Cir. 1981) (citing *Schaffer v. United States*, 362 U.S. 511(1960)). "[I]t is settled that a conspiracy count can forge the needed linkage" for proper joinder, absent a showing that the charge was included in bad faith. *Natanel*, 938 F.2d at 307 (citations omitted); *United States v. Luna*, 585 F.2d 1, 4 (1st Cir. 1978). Further, "[j]oinder is proper . . . even when the objecting defendant is only connected to one part of [the] scheme." *Azor*, 881 F.3dat 11 (citation omitted). Defendants bear the burden of showing misjoinder, and the remedy for misjoinder is severance. *Natanel*, 938 F.2d at 306.

"The government can indict jointly based on 'what it reasonably anticipates being able to prove against the defendants' at the time of indictment." *Azor*, 881 F.3d at 10 (quoting *Natanel*, 938 F.2d at 306). Here, as set forth above, the

4

Indictment alleges, and the government anticipates proving at trial, that the defendants conspired together to commit mail fraud, commit forced labor, and money laundering. As outlined in the Indictment, the counts are part of the same series of acts or transactions that give rise to the conspiracies.

**IV.    The Offenses Charged In The Indictment Are Part Of The Same Series Of Acts Or Transactions.**

A federal grand jury returned an indictment charging twenty-four defendants, including Defendants Maria Patricio, Antonio Chavez Ramos, Enrique Duque Tovar, Delia Ibarra Rojas, Juan Alvarez Campos, and Brett Bussey, in an international mail fraud, forced labor, and money laundering conspiracy. Docs. 3. Defendants were charged for their individual roles, including (1) conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349; (2) conspiracy to engage in forced labor in violation of 18 U.S.C. § 1594; and (3) money laundering conspiracy in violation of 18 U.S.C. § 1956(h). The Indictment provides an introduction explaining the relevant laws Defendants sought to avoid with their schemes, discusses the Defendants' roles in the conspiracies, outlines the objects of the conspiracies, the manner and means of the conspiracies, and certain overt acts committed in furtherance of the conspiracies.

As outlined in the Indictment, members of this organization were located throughout the United States and in Mexico, Guatemala, and Honduras. Their roles included people who filed fraudulent Petitions to bring in H-2A workers, people who contracted with farmers to find and recruit H-2A workers to enter the United States under the H-2A visa program, people who transported H-2A workers, people who supervised H-2A workers in the agriculture fields, people who confiscated the H-2A

workers' identification documents, people who sold or traded the H-2A workers to other members, people who threatened the H-2A workers to ensure their compliance, people who smuggled cash into the United States that was received from the H-2A workers, people who hid the profits of the scheme, and people who tampered with witnesses with knowledge of the schemes. Members of this conspiracy all had different roles, but each role was vital to the other roles, and necessary for the entire organization to operate. For example, a member could not transport H-2A workers into the United States, unless and until, another member first submitted the false Petition seeking authorization to enter the United States. As another example, a member could not exploit a worker, unless and until, another member first submitted the false Petition that authorized the worker to enter the United States on an H-2A visa.

Essentially, one or more members of the conspiracy would (1) unlawfully charge workers for H-2A visas; (2) lie to workers about what their pay would be in the United States; (3) smuggle unlawful fees paid by the workers into the United States for distribution among conspirators; (4) pay other members to file and mail false Petitions for H-2A visas; (5) confiscate identification documents to prevent the workers from leaving or contacting law enforcement once the foreign workers entered the United States on the H-2A visa; (6) force workers to work in agriculture fields in the United States for little to no pay in violation of the H-2A visa process; (7) pay the workers in cash and not under the terms of the Petition; (8) force the workers to live in crowded, unsanitary, and degrading living conditions; (9) threaten the workers

with deportation or violence if the workers complained; (10) use the workers as a work force to sell or trade workers in exchange for money to other members of the organization; (11) require the workers to work at unapproved locations such as restaurants and golf clubs; (12) force workers to pay additional unlawful fees to get their passports and H-2A visas back from conspirators; (13) allow some workers to abscond and not work in agriculture fields under the terms of the H-2A visa program, but only if they paid additional unlawful fees; (14) take the unlawful fees paid by the workers and divide the illegal proceeds among other conspirators involved in the scheme; and (15) hide the illegal proceeds all to avoid detection.

The principal purposes of the mail fraud and forced labor conspiracies are the same, and the acts underlying the conspiracies are also the same. The money laundering conspiracy is likewise part of the same series of acts or transactions because it was designed to conceal the conspiracy to commit mail fraud and conspiracy to engage in forced labor. The charged conspiracies thus "forge the needed linkage" for joinder and are not separate as alleged by Defendants.

## V. The Potential Conflicts Mustered By Defendants Do Not Measure Up And Cannot Compel A Severance.

### a. Defendants' constitutional rights will not be jeopardized by a joint trial.

A joint trial has been found to violate a defendant's constitutional rights in cases where a co-defendant's counsel comments upon the defendant's exercise of his right to remain silent, *DeLuna v. United States*, 308 F.2d 140 (5th Cir.1962); and where the court admits into evidence a mutually incriminating confession of a co-

defendant who does not take the stand, *Schaffer v. United States*, 221 F.2d 17, 20 (5th Cir. 1955). Defendants complain that if they are tried together, there may be evidence of incriminating statements used against them. This concern is misplaced. If the United States introduces statements made to law enforcement that implicate another defendant who does not take the stand, in a joint trial, government counsel would redact such information and instruct its witnesses not to run afoul of the *Bruton* rule.

### b. The jury can make a reliable judgment about the guilt or innocence of Defendants in a joint trial.

Defendants cannot establish "compelling prejudice" based upon potential spillover evidence, complexity of the case, incongruity of their criminal acts compared to those of their co-defendants, antagonistic or mutually exclusive defenses, or the need for a co-defendant's exculpatory testimony. A court's cautionary instructions ordinarily mitigate the potential for a "spillover effect," which occurs "where overwhelming evidence of guilt is introduced against a co-defendant that would not have been admissible against the defendant in a separate trial." *Lopez*, 649 F.3d at 1235. The question of spillover prejudice asks whether evidence against a co-defendant is so inflammatory that it prevents the jury from individually assessing the guilt of each defendant. The Eleventh Circuit has held "a defendant does not suffer compelling prejudice, sufficient to mandate a severance, simply because much of the trial is only applicable to co-defendants." *Id.* at 829 (internal quotations omitted). Similarly, "it is not enough for the defendant to show that he would more likely have been acquitted had he been tried separately, or that the evidence against his co-defendant was stronger than that against himself." *United States v. Cross*, 928

8

F.2d 1030, 1039, n.21 (11th Cir. 1991). Rather, "[t]he applicable test is whether it was within the capacity of the jurors to follow the court's limiting instructions and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements, and conduct." *Id*. at 1039 (internal quotations omitted). Defendants have brought forth no information tending to show a properly instructed jury could not follow the court's instructions to consider each defendant and the evidence against him separately. Instead, they simply claim the evidence of other Defendants wrongdoing will improperly and overwhelmingly influence the jury to find them guilty.

And while the evidence is greater in quantity against some Defendants than others, mere disparity in the quantity of evidence against co-defendants is insufficient to warrant severance. *See U.S. v. Tobin*, 676 F.3d 1264, 1292 (11th Cir. 2012), *cert. denied*, 133 S.Ct. 658 (2012). "If it were enough, in every joint trial the defendant facing the fewest charges with the least amount of evidence would be automatically entitled to a severance. Then, the next defendant left who faced the fewest charges and least amount of evidence would be automatically entitled to a severance, and so on, until only one or a few defendants remained in the trial. That cannot be, and it is not, the law." *Hill*, 643 F.3d at 831-32.

Severance has been granted in an extremely narrow range of cases when "the sheer number of defendants and charges with different standards of proof and culpability, along with the massive volume of evidence, makes it nearly impossible for a jury to juggle everything properly and assess the guilt or innocence of each

9

defendant independently." *Blankenship*, 382 F.3d at 1124. The bar for this kind of prejudice is so high that "only in the rarest case" is severance required due to complexity. *See Lopez*, 649 F.3d at 1235. In *Hill*, the court affirmed the denial of severance in a mortgage fraud case where there were twelve defendants, a 187-count indictment involving more than 300 transactions, over 1,100 exhibits, and more than 100 witnesses. *See* 643 F.3d 807, 819-20, 827-34 (11th Cir. 2011). In *United States v. Kopituk*, 690 F.2d 1289 (11th Cir. 1982), the court affirmed the denial of a severance in a labor corruption case involving twelve defendants, a seventy-count indictment, 130 witnesses, and a seven-month trial resulting in 22,000 pages of transcript. *See id.* at 1320. If the massive *Hill* and *Kopituk* cases were not too complicated for juries to make a reliable judgment, then this case will not prevent the jury from compartmentalizing the evidence and following the court's instructions.

### c. Potential antagonistic or mutually exclusive defenses do not warrant severance, not have Defendants shown they will be deprived of a co-defendant's exculpatory testimony.

Potential prejudicial effects of anticipated defenses and testimony of co-defendants are typically insufficient to warrant severance. *See Hill*, 643 F.3d at 834; *Blankenship*, 382 F.3d at 1125; *United States v. Cobb*, 185 F.3d 1193, 1197 (11th Cir. 1999). Likewise, "co-defendants do not suffer prejudice simply because one co-defendant's defense directly inculpates another, or it is logically impossible for a jury to believe both co-defendants' defenses." *Blankenship*, 382 F.3d at 1125. On the other end of the spectrum,

> Where a defendant argues for severance on the ground that it will permit the exculpatory testimony of a co-defendant, he must show: (1)

10

> a bona fide need for the testimony; (2) the substance of the desired testimony; (3) the exculpatory nature and effect of the desired testimony; and (4) that the co-defendant would indeed have testified at a separate trial.

*Cobb*, 185 F.3d at 1197 (internal quotes and citation omitted). Defendants have not asserted any *bona fide* need for a co-defendant's testimony, or any reason to believe such testimony would be exculpatory.

### d. The violent and inhumane acts do not severely prejudice Defendants by a joint trial.

Severance is not mandated even where a defendant did not know his fellow actors and was unaware of the details of their actions directed at putting forward the aims of the criminal enterprise, *United States v. Machado*, 804 F.2d 1537 (11th Cir. 1986), nor where a defendant participated in only a single aspect of a complex criminal undertaking, *United States v. Astling*, 733 F.2d 1446 (11th Cir. 1984).

Simply demonstrating that a defendant did not participate in every phase of a scheme or conspiracy is not a showing sufficient to justify severance. "...[D]emonstrating that the evidence is stronger against a co-defendant than oneself does not satisfy the burden of showing compelling prejudice." *United States v. Johnson*, 713 F.2d 633, 640 (11th Cir. 1983).

Defendants argue that separate trials are warranted because some Defendants committed violent and inhumane acts in furtherance of the conspiracies, while other Defendants only committed acts of fraud in furtherance of the conspiracies. They argue that the violent and inhumane acts are so prejudicial they will be denied a fair trial. This is a misreading of the Indictment and a misunderstanding of the

11

Defendants' individual roles in the conspiracies. The violent and inhumane acts are part of the same conspiracies. They are also acts committed in furtherance of the same conspiracies. Defendants who engaged in violent and inhumane acts against the workers could not have done so without the other Defendants committing fraud to bring the workers into the Untied States. The Indictment alleges that Defendants Maria Patricio, Antonio Chavez Ramos, Enrique Duque Tovar, Delia Ibarra Rojas, Juan Alvarez Campos, and Brett Bussey, all either prepared false Petitions that allowed workers to be exploited, managed or supervised workers who were exploited by other named Defendants, or committed the violent or inhumane acts themselves.

Defendants have not carried their difficult burden of justifying severance; have not shown the compelling prejudice from joinder necessary to overcome the presumption that the trial court's instructions to the jury will ameliorate any prejudice arising from a joint trial; and have not demonstrated a need for severance which counterbalances the strong precedent for joint trials in this Circuit. For these reasons, the United States respectfully submits that Defendants motions to sever are properly denied.

*Signatures on the Following Page*

        Respectfully submitted,

        JILL E. STEINBERG
        UNITED STATES ATTORNEY

BY:   */s/ Tania D. Groover*

        Tania D. Groover
        Criminal Chief
        Georgia Bar No. 127947
        Post Office Box 8970
        Savannah, Georgia 31412
        Telephone: 912-652-4422
        Facsimile: 912-652-4388
        E-mail: tania.groover@usdoj.gov

BY:   */s/ E. Gregory Gilluly, Jr.*

        E. Gregory Gilluly, Jr.
        Deputy Criminal Chief
        Tennessee Bar No. 019397
        Post Office Box 8970
        Savannah, Georgia 31412
        Telephone: 912-652-4422
        Facsimile: 912-652-4388
        E-mail: greg.gilluly@usdoj.gov