IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

UNITED STATES OF AMERICA,

v.

BRETT DONOVAN BUSSEY,

Defendant.

CASE NO.: 5:21-cr-9

**O R D E R**

Defendant Bussey ("Bussey") filed a Motion for Return of Seized Property From His SunTrust Account. Doc. 640. This Motion is fully briefed.[1] Docs. 933, 942. For the following reasons, I **DENY** Bussey's Motion.

BACKGROUND

On October 5, 2021, a federal grand jury indicted Bussey, along with 23 other Defendants, on felony charges. Doc. 3. The Indictment contained 54 counts.[2] Bussey is charged with conspiracy to commit mail fraud, four counts of mail fraud, conspiracy to engage in forced labor, money laundering conspiracy, and witness tampering. Id. The Indictment alleges Defendants were part of a transnational criminal organization, fraudulently using H-2A visas to smuggle foreign nationals into the United States as agricultural workers, then exploiting the

---

1   Although I held a hearing on this and other motions on April 19, 2024, the parties did not present any additional argument or evidence related to this Motion. Doc. 988.

2   The Government issued a Superseding Indictment on June 4, 2024. Doc. 1012. The charges in the Superseding Indictment against Bussey are essentially the same as the charges against him in the original Indictment. The criminal forfeiture allegations discussed in this Order are also essentially the same. Id. at 39–42.


foreign workers and laundering the illegal proceeds.  Id. at 3.  The Indictment also contained a notice of criminal forfeiture.  Id. at 46–49.  Bussey was named in the forfeiture allegations.  Id.

On November 16, 2021, Kelly Linemann, a Special Agent with the U.S. Department of Labor, sought a warrant to seize the contents of 11 bank accounts connected to the transnational criminal organization described in the Indictment.  Doc. 640-1 (sealed application for warrant). Bussey was the owner and sole authorized signer of one of the accounts, held at SunTrust Bank. Id. at 4, 50.  Agent Linemann believed the subject bank accounts held proceeds from or used to facilitate offenses of mail fraud, conspiracy to commit mail fraud, and conspiracy to commit money laundering.  Id. at 68.  Agent Linemann stated in her affidavit that she was also concerned about conspiracy to commit forced labor.  Id. at 23.  Agent Linemann cited various civil and criminal forfeiture statutes in support of the seizure warrant.  Id. at 1, 5–6, 68.

Agent Linemann stated Defendants received money from illegal transactions and deposited the money into the target bank accounts.  Id. at 33–68.  Bussey filed petitions on behalf of people who illegally charged foreign workers fees to work and exploited the workers in other ways, according to the affidavit.  Id. at 48–51.  Agent Linemann stated Bussey told a confidential source how foreign workers would bring cash into the United States and give it to farm labor contractors and directly to Bussey.  Id. at 32 ("Defendant Bussey further explained that the bus carrying the workers would pull off on a dirt road and the farm labor contractor and Defendant Bussey would meet so Defendant Bussey could collect the duffle bag full of money.").  Agent Linemann stated Bussey filed fraudulent petitions to bring foreign workers into the United States under the H-2A visa program.  Id. at 16–19.  Agent Linemann stated Bussey made $3,680 in payments from his SunTrust account to U.S. Citizenship and Immigration Services to obtain foreign workers' visas.  Id. at 50.  Agent Linemann identified total deposits and withdrawals

from the account and the balance on the account as of March 31, 2021. Id. Agent Linemann concluded the target accounts contained proceeds from crimes or were used to facilitate crimes and subject to forfeiture. Id. at 68. The undersigned issued the seizure warrant. Case No. 4:19-mj-67, Doc. 155.

The Government executed the seizure warrant and seized $23,593.60 from Bussey's SunTrust account. Bussey now moves under Federal Rule of Criminal Procedure 41(g) for the return of the funds seized from his SunTrust account. Doc. 640 at 3. The Government opposes Bussey's Motion. Doc. 933.

## LEGAL STANDARD

A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. Fed. R. Crim. P. 41(g).[3] "[A] Rule 41(g) motion is properly denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture, or the government's need for the property as evidence continues." United States v. Garcon, 406 F. App'x 366, 369 (11th Cir. 2010) (quoting United States v. Pierre, 484 F.3d 75, 87 (1st Cir. 2007)). "If a motion for return of property is made while a criminal prosecution is pending, the burden is on the movant to show that he or she is entitled to the property." United States v. Oduu, 564 F. App'x 127, 130 (5th Cir. 2014) (quoting United States v. Chambers, 192 F.3d 374, 377 (3d Cir. 1999)); cf. United States v. Potes Ramirez, 260 F.3d 1310, 1314 (11th Cir. 2001) ("When . . . a Rule 41(e) motion is filed after criminal proceedings have terminated . . . 'the government must demonstrate that it has a legitimate reason to retain the property.'" (quoting Chambers, 192 F.3d at 377)).

---

[3]  In 2002, Rule 41(e) was moved to Rule 41(g) with no substantive changes. Fed. R. Crim. P. 41 advisory committee's note to 2002 amendments. Case interpreting the earlier Rule 41(e) apply to the new Rule 41(g). United States v. Garza, 486 F. App'x 782, 784 n.3 (11th Cir. 2012).

3

**DISCUSSION**

Bussey contends the seizure of his property was based on 18 U.S.C. § 984. Doc. 640 at 5. Bussey argues § 984 requires the filing of a civil complaint against seized property within one year of the date of the offense that is the basis of the forfeiture, but the Government failed to file a complaint in time (or at all). Id. As a result, Bussey argues the Government's continued possession of his property is unlawful. Id. at 7–9; Doc. 942 at 3. Bussey moves under Rule 41(g) and asks the Court to order the Government to return the seized SunTrust funds. Doc. 640 at 3; Doc. 942 at 4.

The Government opposes the return of Bussey's property. Doc. 933. The Government rejects Bussey's contention that the warrant was based solely on § 984. Id. at 3. The Government argues the seizure warrant was based on probable cause to believe the money in Bussey's SunTrust account constituted proceeds of or used to facilitate violations of 18 U.S.C. §§ 1341, 1349, and 1956—i.e., mail fraud (and conspiracy to commit mail fraud) and conspiracy to commit money laundering—and, therefore, the warrant "articulates two separate causes of actions [for forfeiture] besides tracing . . . ."[4] Id. at 3–4. Because there are other bases for forfeiture—other than § 984—the Government argues Bussey fails to demonstrate he is legally entitled to the SunTrust funds, and he is not entitled to any relief under Rule 41(g). Id. at 4.

Bussey's argument is, in essence, that the Government cannot continue possessing funds seized from his SunTrust account because the Government missed its opportunity to seize the funds under § 984.[5] The Government essentially agrees that it cannot seek civil forfeiture of the

---

[4] Notably, Bussey is charged in the Superseding Indictment with conspiracy to commit mail fraud, substantive counts of mail fraud, and conspiracy to commit money laundering. Doc. 1012.

[5] In this Motion, Bussey does not challenge the propriety of the warrant itself or the probable cause finding supporting the warrant's issuance. Bussey does not argue that the initial seizure of the SunTrust

SunTrust funds under § 984 at this time.[6]  Even so, the Government argues Bussey's Motion should be denied.  The Government maintains it can continue holding Bussey's funds because it has other avenues to seek forfeiture of the property.

The Government's argument is more convincing.  The seizure warrant was not based solely on § 984.  The warrant was also based on Agent Linemann's statements in her affidavit that the SunTrust funds constituted proceeds from crimes or were used to facilitate crimes.  As a result, even if the Government can no longer pursue civil forfeiture under § 984, the Government can continue holding Bussey's property during the pendency of the criminal case because the Government has other bases for pursuing forfeiture of the SunTrust funds.

Bussey's argument hinges on certain temporal requirements related to civil forfeiture.  Section 981 establishes a cause of action for the civil forfeiture of property involved in or traceable to certain criminal offenses.  A cause of action under § 981 must be initiated within five years of the alleged offense.  19 U.S.C. § 1621.  Section 984 does not establish a separate cause of action for forfeiture.  Instead, it "modifies" the requirements of forfeiture actions.  United States v. $8,221,877.16 in U.S. Currency, 330 F.3d 141, 158–59 (3d Cir. 2003).  Specifically, § 984 allows the forfeiture of substitute assets or "fungible" property.  In other words, § 984 eliminates the need for the Government to trace property directly to the offense

---

funds was improper or unlawful.  Rather, Bussey challenges the Government's ongoing possession of the funds now that the time for filing a civil complaint for forfeiture under § 984 has expired.

[6]  The Government notes there is a split in authority about what the Government must do to satisfy the one-year requirement of § 984.  Doc. 933 at 2.  Some courts have concluded the Government must file a civil complaint within the one-year period, while others have concluded the Government need only obtain a seizure warrant during that time.  Id. (collecting cases).  Thus, the Government concedes Bussey "may be legally correct" about one view of the requirements of § 984, but the Government does not necessarily concede it is wholly prevented from pursuing civil forfeiture under § 984.  Regardless, the Court need not resolve this issue at this time because the Government is not relying solely on § 984 as basis for continued possession of the SunTrust funds.

giving rise to the § 981 forfeiture.  However, to use the substitute-asset provision in § 984, the Government must move quickly.  Under § 984, the Government must pursue forfeiture of fungible property within one year, as opposed to five years for directly traceable property.

Bussey's argument depends on his view that the initial warrant for seizure of the SunTrust funds was based solely on § 984.  Doc. 640-1 at 6–8.  That view is incorrect.  Agent Linemann's affidavit plainly contends that the SunTrust funds were "traceable" to mail fraud and money laundering offenses.  In paragraph 8 of the affidavit, Agent Linemann discusses the legal bases for seizing directly traceable property (i.e., not substitute assets).  Doc. 640-1 at 8.  Agent Linemann addresses the possibility of seizing substitute assets separately, in the next paragraph of the affidavit.  Id.  Later in the affidavit, Agent Linemann describes information about Bussey and his use of the SunTrust account.  Id. 60–63.  Agent Linemann describes specific transactions, intercepted conversations, and an interview with a confidential source, all of which support a conclusion that Bussey was engaged in and knowledgeable about the scheme related to H-2A visa petitions and use of foreign workers.  Ultimately, Agent Linemann states Bussey deposited proceeds of the scheme into his SunTrust account and commingled those funds with legitimate funds.  Thus, it is clear Agent Linemann sought and obtained a warrant to seize funds that were directly traceable to substantive offenses, and, therefore, were subject to civil forfeiture under § 981.

The warrant also plainly authorized seizure of the SunTrust funds based under criminal forfeiture authorities.  Agent Linemann's affidavit states the "application requests the issuance of a warrant under 21 U.S.C. § 853(f)," which sets forth the procedures for obtaining a seizure warrant for property subject to criminal forfeiture.  Doc. 640-1 at 6.  The affidavit goes on to state the property to be seized is subject to criminal forfeiture under 18 U.S.C. § 982(a)(2)(A),

6

which provides for criminal forfeiture of certain property upon conviction of various offenses.[7] Thus, the record demonstrates that the initial warrant and subsequent seizure were based on both criminal and civil forfeiture authority.

Defendant Bussey has not established a fundamental requirement for relief under Rule 41(g): a showing that he is entitled to lawful possession of the seized SunTrust funds. At most, Bussey has shown the Government may not be able to seek forfeiture of the seized funds under § 984. But he has not shown the Government is wholly precluded from seeking forfeiture of these funds. The Government may pursue civil forfeiture of the funds as property directly traceable to the alleged offenses. It does not appear the time for the Government to pursue such forfeiture has run.

Additionally, the Government seized the SunTrust funds based on criminal forfeiture authority, and that provides an additional basis for the Government's ongoing possession of the funds. Section 983(a)(3)(B)(ii)(II) states the Government is not required to return seized property if it obtains an indictment containing a forfeiture allegation and takes the steps necessary to preserve its right to maintain the property. The Government has done both in this case. The Government obtained an Indictment that contained a criminal forfeiture notice.[8] Doc. 3 at 46–47. The criminal forfeiture notice states Bussey's substitute property is subject to forfeiture under 21 U.S.C. § 853(p). Id. at 49. Then, soon after obtaining the Indictment, the Government obtained and executed the seizure warrant. The criminal case is still pending, and it

---

[7] Since civil forfeiture is legally authorized by 18 U.S.C. § 981, 28 U.S.C. § 2461(c) makes criminal forfeiture available for the mail fraud and mail fraud conspiracy counts in this case. United States v. Masilotti, 495 F. App'x 975, 976 (11th Cir. 2012).

[8] The Superseding Indictment contains a similar notice. Doc. 1012 at 39–41.

appears the Government may still pursue criminal forfeiture. Thus, the Government has an additional avenue for seeking forfeiture of the seized SunTrust funds.

Ultimately, Bussey fails to show his property was unlawfully seized, is being unlawfully held by the Government, or that he is legally entitled to the property. Bussey's argument is based on the Government's failure to file a timely civil complaint under § 984, but the Government has other avenues for seeking forfeiture of the SunTrust funds. Bussey's property is still, potentially, subject to civil forfeiture under § 981 as directly traceable proceeds from an offense and is subject to criminal forfeiture if he is convicted of the relevant offenses in the Superseding Indictment. Because the Government has other avenues for seeking forfeiture of the SunTrust funds, I **DENY** Defendant Bussey's Motion.[9]

## CONCLUSION

For the foregoing reasons, I **DENY** Defendant Bussey's Motion for Return of Seized Property From His SunTrust Account.

**SO ORDERED**, this 19th day of November, 2024.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[9] Defendant Bussey states the Government seized $23,593.60, but the last bank statement prior to the seizure reveals a balance of $11,243.77. Doc. 640 at 3; Doc. 942 at 3–4. Bussey states this demonstrates the Government's approach to forfeiture is "troubling," implying the Government seized far more than it should have. However, Bussey does not make a specific argument about the disparity between the balance of the account and the seizure. For example, he does not point to any facts or law that would show the Government was only permitted to seize $11,243.77 (or some lower amount). Therefore, this issue is not before the Court, and I will not address it in this Order.