UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Indictment No: |
| vs. | ) | 5:21-cr-009-20 |
| | ) | |
| BRETT DONAVAN BUSSEY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT BUSSEY'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DENYING HIS MOTION TO SUPPRESS WIRETAP EVIDENCE**

Brett Bussey, files this, his Objections to the Magistrate Judge's Report and Recommendation Denying his Motion to Suppress Wiretap Evidence, doc # 1202, and shows this Court the following:

**I.    Standard of Review.**

A district court considers de novo any objection to a Magistrate Judge's Report and Recommendation. "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3).

A district judge has a duty to conduct a "careful and complete" review of a Magistrate Judge's Report and Recommendation. *United States v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. Unit B 1982)). This review may take different forms, however, depending on whether there are objections to the Report and Recommendation. The district judge must "make a de novo determination of those

portions of the [Report and Recommendation] to which objection is made." 28 U.S.C. § 636(b)(1)(C). After conducting a complete and careful review of the Report and Recommendation, the district judge "may accept, reject, or modify" the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1)(C); *Williams*, 681 F.2d at 732.

## II. Procedural History.

In July 2023, Bussey moved to suppress the wiretap evidence against him, doc # 651, focusing on the impropriety of the initial application and arguing there was a lack of probable cause to support the wiretap. Doc # 651, p. 5-22. Bussey argued that agents obtained his telephone number from a "labor certification [he] had previously submitted during the investigation," doc # 651-1 at ¶122, but did not tie that number to criminal activity. Doc # 651, p. 5-6, 21-22. Indeed, the one ETA 9142 petition discussed in the affidavit did not reflect illegal activity – as shown by information that the government had but did not disclose in the affidavit. Doc # 651, p. 6-7. Bussey asserted, too, that the wiretap application failed to disclose that he made certain statements to the confidential source ("CS") detailed in the application only after the CS had gotten him drunk and other statements that the affidavit does not accurately represent. Doc # 651, p. 8-10, 12-19. Bussey discussed the generalized assertions in the application and the omissions about the CS in the affidavit. Bussey asked the Court to hold a *Franks* hearing and explained why the application did not establish probable cause or necessity for a wiretap. Doc # 651, p 4-5, 19-25.

The government responded to Bussey's Motion, doc # 885, to which Bussey filed a Reply. Doc # 939.

In April 2024, a hearing was held on Bussey's motion, and the Magistrate held a provisional *Franks* hearing. Doc # 988, # 1133.

On January 27, 2025, the Magistrate Judge Recommended that this Court deny Bussey's Motion to Suppress the Wiretap Evidence and the request for a *Franks* hearing. Doc # 1202. Bussey filed an Unopposed Motion for Extension of Time in Which to File Objections, doc # 1216, which was granted, doc # 1224, giving him until February 20, 2025, in which to file objections.

These Objections timely follow.

### III. Argument and Citation of Authority.

#### A. The Magistrate Judge Erred in Concluding that the Affidavit's Unchallenged Portions Establish Probable Cause.[1]

The Magistrate cites the following "unchallenged portions of the affidavit" to conclude the affidavit establishes probable cause. Doc # 1202, p. 20.

- That the affiant stated there was probable cause to believe Bussey committed several target offenses. *Id.*

- As for Bussey's involvement in the fraudulent petitions, the Magistrate writes that it is "undisputed" that Bussey submitted 3 petitions that investigators flagged as "potentially" containing fraudulent information

---

[1] Bussey will attempt to follow the Magistrate's headings for clarity.

and that DOS rejected 833 visas associated with his petitions because of inaccurate or incomplete information. *Id.*

- That Bussey was linked to other target subjects through phone records associated with TTI for whom Bussey prepared multiple H-2A petitions. *Id.* at 20-21, and

- That other target subjects committed target offenses, including Strickland and Rojas. *Id.* at 21-22.

Respectfully, the Magistrate takes the affiant's conclusions as fact. In *Franks*, the Supreme Court made the point that a warrant must contain "particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *United States v. Franks*, 438 U.S. 154, 165 (1978). The *Franks* Court discussed an example—where probable cause was premised on an informant's tip.  There, it isn't sufficient for the agent just to report that he concluded that the informant was reliable.  "If an informant's tip is the source of information, the affidavit must recite some of the underlying circumstances from which the officer concluded that the informant . . . was credible or his information reliable." *Id.*

In *Watts v. Kroczynski*, 636F.Supp. 792, 798 (W.D. La. 1986), the court in considering a motion for return of property, noted that the affidavit failed to assert facts underlying the affiant's conclusions that "plaintiffs had probably violated federal law. . ." The district court concluded that the allegation was a mere

conclusory statement that gave the magistrate virtually no basis for determining whether the target offenses had been committed. *Id*.

Similarly, here, the Magistrate Judge uses two of the affiant's conclusions (that he believed there was probable cause to believe Bussey committed the target offenses and that 3 petitions of Bussey's were flagged as potentially containing fraudulent information) to bolster his conclusions that "unchallenged" portions of the affidavit establish probable cause.

And absent those conclusory statements of the affiant to the unchallenged portions of the affidavit, it does not establish probable cause.

First, that DOS has refused 833 visas related to Bussey's petitions because of inaccurate or incomplete information. Doc # 1202, p. 20.

Second, that records show Bussey was linked by phone records with "target subjects" from January 1, 2019, to October 8, 2019. *Id*. p. 20-21. One of the individuals identified as a target subject by the Magistrate Judge, Leticia Perez Quintino, is not identified in the affidavit as a target subject. Doc # 1202, p. 21, ¶6. The only time her name is mentioned in the affidavit is when it references Bussey's calls to her and her subscriber information. Doc # 651-1, ¶131(v, w). Only 2 of the target subjects mention Bussey and here is what the affidavit provides with respect to those two specific people:

- Strickland "is business partners with Bussey and files fraudulent petitions for workers to enter the United States under the H-2A visa program." Doc # 1202, p. 20 citing doc 651-1, ¶131 (a -b)

- Bussey, as agent, submitted an ETA 9142 electronically; the employer and other details on the form led to Donna Rojas. and led the agent to conclude that two numbers belonged to her. The agent represented that Rojas "is fraudulent [sic] using the H-2A visa program to smuggle Mexican nationals into the United Staes under the pretext of being an agricultural worker." Doc # 1202, p. 21, citing ¶131(o).

Taking each of these facts in turn, the affiant does not suggest that the DOS refusal of 833 visas is an indicia of fraud. As shown below, the Notice of Deficiency process outlined at 20 C.F.R. 655.141 (a) contemplates the return of applications with errors or inaccuracies. The single 9142 identified in the affidavit sought certification for 250 workers, doc # 637-2, p. 22, almost 30 percent of the total refused visas.

And, Bussey's mere contacts with subjects of an investigation are not sufficient to warrant probable cause. When faced with a warrant application, the Court must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Affidavits must provide a judge "with a substantial basis for determining the existence of probable cause," and "wholly conclusory statement[s]" are not enough. *Id.* at 239. A judge's approval of a

6

warrant "cannot be a mere ratification of the bare conclusions of others." *Id.* Setting aside the conclusory allegations that the Magistrate Judge relied upon as fact, the Magistrate Judge erred in determining that the unchallenged portions of the affidavit establish probable cause.

### B. The Magistrate Erred in Concluding that the Agent's Reckless Misrepresentations and Omissions Do Not Undermine Probable Cause.

#### 1. The ETA 9142 Certification.[2]

The agent summarizes in his affidavit the H-2A program, including Form ETA 9142. *Id.* at ¶¶19-31. Despite claiming expertise in investigating similar matters (the word "experience" is used at least 18 times in the affidavit), the affiant misrepresents the signing burden of the agent in paragraph 31, omits the relative responsibilities of the employer and the agent in the provision of information, and omits the fact that Notices of Deficiency are part of the application process.

The affidavit claims that the agent's certification on a Form 9142 contains a "penalty of perjury" clause. Doc # 651-1, ¶31. It does not. The Magistrate acknowledges that Bussey has identified a misrepresentation, doc # 1202, p. 23, but erroneously concludes that because Bussey certifies the information contained in the application is true and correct, that even if corrected, the misrepresentation would not undermine probable cause. *Id.* p. 25-27.

---

[2] As the Magistrate noted, doc # 1202, p. 11, n. 3, Bussey made this argument in a separate motion to suppress the Microsoft search warrant, doc # 637 and incorporated those arguments here. We follow the Magistrate's lead in referencing the wiretap applications affidavit in the incorporated arguments.

For several reasons this analysis is error. First, the Magistrate doesn't address Bussey's argument that it is Form 9142A-Appendix, not ETA Form 9142A that contains the penalty of perjury clause. Doc # 637, p. 6-7, 12-14. The two forms at play are significant. The Form 9142A contains no certification clause, no perjury clause. Yet the affidavit omits and the Magistrate doesn't address the omission that "Employers use *Appendix A* of the Form ETA-9142A to attest that they will comply with all of the terms, conditions, and obligations of the H-2A program." Fed. Reg., Vol. 84, No. 104 (May 30, 2019) at 25075.

Second, the employer's Declaration on Appendix A, occupies almost three pages, and sets out in detail the responsibilities between the employer and agent. Doc # 637- 2, p. 33-35.  It is the employer, not the agent, who is responsible for the accuracy of the information in 9142A-Appendix:

> I hereby acknowledge that the agent. . . identified in section E of the Form ETA-9142A and section A above is authorized to represent me for the purpose of labor certification and, by virtue of my signature in Block 5 below, **I take full responsibility for the accuracy of any representations made by my agent or attorney.**

*Id*. p. 35. (emphasis added).[3]

Third, it is the employer, not the agent, who signs the form under penalty of perjury:

> I declare under penalty of perjury that I have read and reviewed the application and that to the best of my knowledge the information contained

---

[3] A separate form – USCIS Form I-129 – does require an agent to sign under penalty of perjury but attests that the employer has reviewed the completed petition and informed the agent that all of the information on the form and in supporting documents is complete, true, and accurate. *See*, doc # 637-2, p. 10.

> therein is true and accurate. I understand that to knowingly furnish false
> information in the preparation of this form and any supplement thereto or
> to aid, abet, or counsel another to do so is a felony punishable by a
> $250,000 fine or 5 years in the Federal penitentiary or both (18 U.S.C. §
> 1001).

*Id.*

In factual contrast, the agent's certification is a single paragraph that states

that:

> I hereby certify that I am an employee, or hired by, the employer listed in
> Section C of the Form ETA-9142A, and that I have been designated by the
> employer to act on its behalf in connection with this application . . . I have
> attached a Letter of Representation from the employer. I also certify that to
> the best of my knowledge the information contained herein is true and
> correct. I understand that to knowingly furnish false information in the
> preparation of this form and any supplement hereto or to aid, abet, or
> counsel another to do so is a felony punishable by a $250,000 fine or 5 years
> in a Federal penitentiary or both (18 U.S.C. § 1001).

*Id.* at 33 at ¶ A.

The Magistrate reasons that the distinction between the employer's

certification and the declaration of the agent doesn't diminish or eliminate the

agent's role. Doc # 1202, p. 26. Yet combining the factual misrepresentations and

omissions above demonstrate that the agent was at the very least reckless in his

factual recitation, and if corrected, those facts and omissions would defeat the

showing of probable cause.

### 1. The 224 Meadow Road Location.

#### (a)    Failure to Describe Other Worksites

The affiant mentions one Bussey 9142, which listed 224 Meadow Rd, Alma,

Georgia as one of the places of work. Doc # 651-1, ¶43. Although somewhat

confusingly written, the affidavit states that a letter submitted on behalf of the grower showed a fixed site address as that listed in the ETA 9142. *Id*. The affidavit asserts that grower Burnam signed and dated a letter November 14, 2018. *Id*. The affiant states that agents went to 224 Meadow Road, and interviewed the owner who said he did not request any workers. Doc # 651-1, ¶45.

Burnam's "letter," is in fact a fully executed work contract agreement between the Farm Labor Contractor (the employer) and Burnam. See, doc # 637-4, p. 1-3, It is signed by both Burnam and the FLC. It is not signed by Bussey.

More importantly, omitted from the affidavit is that 224 Meadow Road was only one of 21 sites where H2A workers would be working. Doc # 637-2, p. 25, 31 at ¶ F.c.7a and Addendum, ¶ F.c.7. The Magistrate discards this omission by stating that at most disclosure would have shown that there were a number of work sites, at least one of which was "suspicious." Doc # 1202, p. 26.

Probable cause, though, demands more than a mere suspicion, rather, it requires a fair probability that criminal activity will be found. *United States v. Pulido-Tejedo*, No. 4:07-cr-037, 2007 WL 1812654, at *2 (S.D. Ga. June 18, 2007), *report and recommendation adopted*, No. 407-cr-037, 2007 WL 2226057 (S.D. Ga. July 30, 2007); *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990).

 Bussey understands that it is his burden under *Franks* to show that an alleged omission would have prevented probable cause. Doc # 1202, p. 27. A factual showing that a single property out of the 21 submitted erodes the probable cause.

### (b)    The Discrepancy Between the GPS Coordinates and 224 Meadows Road

The Burnam contract with N.A., lists 9 worksite field locations for workers. Location number 1 has GPS coordinates of 31.532389, -82.482599, and an address of 224 Meadow Road.

At the time of briefing on this matter, in July 2023, inserting the GPS coordinates provided by Burnam produced a physical address of 246 Meadows Road, Alma. A Google Maps search no longer produces that address, but it does produce a pin drop location, which appears to be directly across the street from 224 Meadows Road. The entire kerfuffle here then appears to be a mistake based upon someone inserting the GPS coordinates into Google Maps.



The Magistrate Judge states that Bussey has provided no evidence that GPS coordinates that almost lineup with the closest street address was a mistake. Doc # 1202, p. 27. Again, Bussey accepts he has the burden to demonstrate

misrepresentations and omissions, and he has demonstrated that inserting the GPS coordinates for worksite 1, provided by Burnam into Google Maps produces the address of 246 Meadow Road. That is proof regularly accepted by the courts, and government experts regularly rely on Google Maps. *United States v. Duggar*, 2022 WL 1647334, (May 24, 2022) (government's computer expert used Google Maps to testify about GPS coordinate locations);  *Pahls v. Thomas*, 718 F.3d 1210, 1216 (10th Cir. 2013) (most courts are willing to take judicial notice of geographical facts and distances from private commercial websites such as MapQuest, Google Maps, and Google Earth); *United States v. McElroy-Carlos*, No. CR 2022-0011, 2024 WL 3519141, at *3, n. 2 (D.V.I. July 24, 2024).

The Magistrate suggests that "if the GPS coordinates were inconsistent with the street address, that inconsistency would have made the application more suspicious, not less." Doc # 1202, p. 27. That conclusion rejects the proof that inserting the GPS coordinates supplied by Burnam returned a non-existent street address, but whose pin location is directly across the street from 224 Meadow Road. While that street address may not have requested workers, Mr. Burnam and the FLC were requesting workers for the GPS coordinates across the street. The distance between 224 and the GPS coordinates in the map above is no indicia of fraud. The Magistrate, therefore, errs in concluding that the omitted information would not undermine probable cause.

### (c)  Failure to Describe Burnam's Letter and Investigator Contacts with Burnam

The affidavit fails to describe Burnam's contract with the employer and fails to disclose that in April 2019, investigators contacted Burnam. A copy of that log entry is found at doc # 637- 3. It is related to the application attached as Exhibit 2 as it bears the same receipt number – WAC1914050982H2A. Burnam told the reporting agents about his arrangements with the employer listed on the ETA-9142 form. *Id.* p. 2. Burnam reported that the employer was one of two contractors he hired to cover labor needs for 400 acres of blueberry crops spread across 8 farms in three Georgia counties; that the employer provided and housed the workers. *Id.* He relayed no conversations with Bussey.

As noted above, Burnam's "letter," is in fact a fully executed work contract agreement between the Farm Labor Contractor (the employer) and Burnam. See, doc # 637-4, p. 3, It is signed by both Burnam and the FLC, not by Bussey. The Magistrate erroneously concludes that the contract does not aid Bussey's argument, doc # 1202, p. 28, n. 15. In fact, the contract between the FLC and Burnam demonstrates that the GPS coordinates were provided by Burnam to the FLC because the investigator's notes do not show any contact between Burnam and Bussey.

The Magistrate chides Bussey for this argument concluding that the notes do not show that Burnam did not talk with Bussey and do not show that all of Burnam's contacts were with the employer. Doc # 1202, p. 29. Bussey can't prove a negative in the context of the facts here. The facts not disclosed in the affidavit demonstrate that the contract was between the employer and Burnam. Not Bussey.

And, the investigator's notes do not mention any contact between Bussey and Burnam. The investigator's notes of his conversation with Burnam do not mention Bussey at all. The contact was made in April 2019, 6 months before the wiretap application.

Under *Franks,* a defendant may challenge the veracity of an affidavit in support of a search warrant if he makes a "substantial preliminary showing" that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to the finding of probable cause. *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006).

Bussey met his burden of showing that the misrepresentation and omission were recklessly made, and that absent those misrepresentations and omissions probable cause would have been lacking. The Magistrate erred in concluding otherwise.

### 3. The NOD

The affiant claimed that NPC emailed Bussey a Notice of Deficiency ("NOD") letter about the single petition related to Bussey because the 9142 failed to provide documentation related to worker transportation, an original surety bond, and a current hotel inspection. Doc # 651-1, ¶ 44. The agent then states that Bussey responded via email that "included various documents . . ." *Id*.

The Magistrate mistakenly states that the Notice of Deficiency is not a fact. Respectfully, that is an error. The affiant touts his experience as an agent, notes his

"consular and immigration training," and discusses ETA 9142 procedures, in part. Doc # 651-1, at ¶¶ 19, 23-31. Despite that training and expert, he wrongly alleges that Bussey signed the petition under penalty of perjury. That is a fact. The 9142 states that in its introductory language:

> . . .In accordance with Federal Regulations, incomplete or obviously inaccurate applications will not be certified by the Department of Labor . . .

Doc # 637-2, p 23. That language contained in the introduction to the petition is a fact.

The Magistrate states that Bussey is arguing that the affidavit should have included a "favorable characterization of the NOD process" and that Bussey has not shown that NOD's are standard practice. Doc # 1202, p. 30.

As to the favorable characterization issue - Bussey does not contend that the affiant must favorably characterize a regulatory scheme. But an agent who claims an expertise in the regulations and the documents related to that process, should truthfully state what the documents say, not omit favorable, material facts, and accurately describe those documents. Here, the agent made misrepresentations or omissions about Bussey in obtaining a search warrant by suggesting that the sending of an NOD is a marker of fraud. It is not. And although the agent states that Bussey sent responsive documents, he omits the fact as to whether those documents cured the petition.

As for Bussey's failure to show that NODs are standard practice, or how they are applied in practice, Bussey correctly cites the applicable regulation. Doc # 637,

p. 10. One would suppose that the regulatory scheme set out in the Code of Federal Regulations accurately describes the process. If a Form 9142 is "incomplete, contains errors or inaccuracies, or does not meet the requirements set forth in this subpart," the agency will notify an employer within 7 business days of receipt and inform the employer of deficiencies via a Notice of Deficiency. *See* 20 C.F.R. §655.31.

In rejecting Bussey's argument that these omissions impact the probable cause analysis, the Magistrate again grasps onto the agent's conclusion that "Bussey has filed three fraudulent petitions" as fact. Doc # 1202, p. 30. As discussed above, the "three fraudulent petitions" is the agent's conclusion, not fact, and therefore cannot provide probable cause. *Franks*, 438 U.S. at 165.

And as discussed above, the burden is on the employer – not the agent – to certify the accuracy of ETA Form 9142. There is nothing unusual or illegal about the NOD process - it is what the documents and regulations provide.

The Magistrate Judge's conclusion that the agent's omissions, if corrected, would not impact the probable cause determination is, therefore, error.

### 4. The CS's Criminal History.

The Magistrate concludes that the omissions identified by Bussey do not undermine probable cause because there was substantial information about the CS's criminal history and because nothing in the affidavit "was based on the CS's credibility." Doc # 1202, p. 32.

Bussey set forth the troubling facts underlying the CS's sexual assault conviction, including the fact that there was also a nolo plea for a sexual assault in 2000, under seal. Doc # 651-7, 8 and 9.

In concluding that there was sufficient information regarding the criminal history of the CS, the facts disclosed in the unredacted portion of Mr. Bussey's motion to suppress, doc # 651, p. 12, show a shocking abuse of trust by the CS.

REDACTED AND FILED UNDER SEAL.

Here, both the CS and the government knowingly exploited Bussey's alcoholism by plying him with liquor when he would meet the CS. That fact, of course, as set forth below, was also concealed from this Court. The CS's history of exploitation of the vulnerable impact his credibility and should have been disclosed.

As to the credibility of the CS, the Magistrate states that "nothing in the affidavit was based on the CS's credibility." Doc # 1202, p. 32. As discussed below, the CS, with the government agent's knowledge, got Bussey drunk at the meeting despite knowing of his chronic alcohol abuse. On several of those occasions, Bussey and the CS are clinking glasses, saying cheers more than 5 times. To say that nothing in the affidavit relies on the CS's credibility ignores what even the Magistrate noted was troubling conduct. Doc # 1202, p. 33.

Of course, that "troubling" conduct was withheld from the Court and if it had been disclosed, it certainly bears on the credibility of the CS.

Therefore, the Magistrate erred in concluding that additional information about the CS's criminal history and undisclosed "troubling" conduct would have undermined probable cause.

### 5.  The April 30, 2019 Meeting With the CS.

The government conduct surrounding this meeting is alarming, undermines probable cause, demonstrates the reckless actions of the agents, and so Bussey sets them out in detail.

The affiant writes that "[l]aw enforcement previously directed the CS to contact Bussey with the agents to discuss the TCO illegal scheme and determine how the CS could profit from [it]." Doc 651-1, ¶122 But the agent doesn't reference the April 30, 2019, meeting in his affidavit.

That conversation centered around several topics driven by the CS, like his complaints that his hotel had too many vacant rooms, he was in financial trouble, and he wanted Bussey's assistance. See, doc # 651-6. That document number is a recording of the April 30, 2019 conversation and citations below are to minute, second time stamps.

In the meeting, Bussey at first explained what he did and how the process worked to legally arrange for migrant works from Mexico and Guatemala to come to Georgia to work in the fields. *Id.* at 12:41-16:04. Meanwhile, the CS tried to drive the conversation in the direction of "kickbacks" and "under the table" arrangements to make money. *Id.* at 5:56 – 5:58, 8:18 – 8:26, 37:26 – 37:31.

Agents knew Bussey was an alcoholic, doc # 1133, 98-99, 156, and knew that the CS was going to be providing him alcohol during the meeting. Doc # 1133, p. 156:9-24. Those facts do not appear in the affidavit. *Id*. at 158:2-18.

The CS tells Bussey at the outset, "I've got some Scotch" *Id*. 3:41 - 3:43.

Over the course of the meeting that lasted an hour and forty-five minutes, the CS

- Says "cheers" 5 times (6:04 – 6:06, 19:26 – 19:28, 49:39 - 49:41, 1:07:44 – 1:07:47, 1:14:29 – 1:14:31);

- Encourages Bussey to come back and drink (1:03:38 – 1:03:45); and

- Urges Bussey to finish his drink and not waste good Scotch (1:38:30 – 1:38:38).

After the meeting, a female agent tells the CS, "You can't get him drunk," and a male agent remarks that the agency could get into trouble if Bussey were to "kill a family" driving drunk. *Id. at 1*:45:48 – 1:45:59. The CS remarks that Bussey is an alcoholic. *Id.*

Early in the conversation on April 30, 2019, before the effects of the alcohol kick in and the CS has uttered "Cheers" only once, Bussey talks about how he runs his business. When the CS says he wants to work with Bussey and give him a "kickback," Bussey explains his frustration about how farm workers are being held up at the border, the costs and the process on how the system works legally. *Id*. at 5:56-8:18. After the CS complains about how his hotel is going under with a number of unoccupied rooms and mentions "kickback" again, Bussey explains to

the CS what he needs to do to get started legitimately. *Id.* at 12:38-16:04. When the CS wants something "immediately," Bussey says that he cannot help the CS because the process takes times and requires all I's dotted and all T's crossed for the paperwork to get accepted. *Id.* Bussey says things like charging workers is illegal, (19:40-19:48) he has never charged workers, (16:21-16:21) no one can enslave workers, (22:46-22:50) and he wants to go to Mexico to facilitate getting workers into the country legitimately. (27:00-27:15) Bussey says he knows people who have charged workers (21:20-21:22), but when the CS talks about making money "under the table," Bussey responds that he does not know where to recruit workers in Mexico. *Id. at 37*:25 – 37:45.

After an hour of drinking heavily with the CS, Bussey says that the recruiters do not tell him their secrets, and they just want him to process legitimate paperwork. *Id. at 1*:25:00-1:25:11. Bussey also tells the CS that labor camps are legal if they are inspected 46:18-46:30.

There is an erosion in the conversation about the half-way point, likely because of the amount of alcohol. The CS drives Bussey to his car and then meets with agents, who tell the CS that he cannot get Bussey drunk. *Id. at 1*:45:48 – 1:45:59. Again, the CS responds to agents by saying that Bussey is an alcoholic. *Id.*

The Magistrate writes that Bussey has does not explained how "alcohol consumption at the meeting would impact the probable cause determination . . . . [because] Bussey does not suggest, for example, that he said things that were untrue or exaggerated because he was intoxicated." Doc # 1202, p. 34. Respectfully,

that is the entire purpose of Bussey's careful showing regarding the fact that the CS plied him with alcohol. The meeting lasted more than hour and 45 minutes and the CS says "cheers" more than 5 times. Doc # 1133, p. 157:1-5. Bussey was drunk. Bussey was an alcoholic. The government knew that the CS was going to be serving an alcoholic alcohol.

The Magistrate's conclusion that Bussey has not shown that his statements were influenced by alcohol disregards the fact that alcohol is well known to impair the user. The affiant knowingly did not disclose the April 30, 2019 meeting because it demonstrated the reckless conduct of the CS and agents, and undermined probable cause. The Magistrate erred in concluding otherwise.

### 6.  The August 20, 2019 Meeting With the CS.

The recording of this meeting was submitted to the Court under seal as doc # 651-10 and we reference the time stamps in the argument below.

Bussey demonstrated that the affidavit states that Bussey "would deal" with Gomez. *Id*. at ¶126(a). When, in fact, he says he "*wouldn't* deal" with Gomez. Doc # 651-10, 41:50-41:54. The Magistrate shirks this misrepresentation off as a "small discrepancy," that is not material, doc # 1202, p. 35, because he reasons what Bussey is really saying is – "I wouldn't deal with Gomez, if I were you." *Id*. Respectfully, that conclusion of the Magistrate contradicts the plain statement of Bussey both in this meeting and the October 1 meeting addressed below and is in error.

The Magistrate doesn't address Bussey showing that the agent's conclusion misrepresents the conversation when he writes that "Bussey was explaining that Gomez would use his employment" as a DOL inspector "to unlawfully approve housing locations for H-2A workers if they paid him a bribe or kickback." Doc # 651-1 ¶126(a). That conclusion does not reflect Bussey's specific statement that he would *not* deal with Gomez. That statement is confirmed in the October 1, 2019, meeting that is also not mentioned in the affidavit, when Bussey repeats about Gomez, "I don't trust him any further than I can throw him." Recording 27:17.

Bussey then made additional showings of the affiant's misrepresentations. In the next paragraph, he states that Bussey knows a "big head honcho guy" in Mexico and concludes that Bussey "had a recruiter in Mexico." *Id.* ¶127(b). Bussey said, "I haven't met him." Recording 45:30.

The affiant swears that "These workers then pays [sic] *Bussey* for entering the United States under the H-2A visa program" ¶127(b))(emphasis added), Bussey says that the workers pay the *crew leaders*. Recording 49:03. This is consistent with what Bussey told the CS in the undisclosed April 30 conversation – i.e., that crew leaders make thousands charging the workers, which is illegal (4/30 recording 19:35-19:48) and that Bussey has never charged a worker Id. at 21:17-21:19. The Magistrate concludes that Bussey describes a criminal scheme and that the agent's opinion about payment to Bussey is based on the recording. Doc # 1202, p. 37. But that conclusion is belied by Bussey's plain statements on the recording that the workers pay crew leaders. Recording 49:03.

The Magistrate errs in concluding that Bussey has only identified an immaterial discrepancies that would not undermine probable cause. Doc # 1202, p. 37-37.

Bussey does not appeal the Magistrate's Report and Recommendation about Donna Rojas or the H2-A petitions addressed at doc # 1202, p. 37 and 38.

Bussey does, however, appeal the Magistrate's conclusion that the affiant did not misrepresent in Paragraph 127 that Bussey used "TTI to arrange for a meeting between Bussey and the CS." Doc # 651-1, ¶127. Again, the CS texted Bussey on August 15, 2019, ¶122, then called him in an unmonitored call contrary to the agent's instructions to confirm the meeting. *Id*. at ¶¶122-23. This is hardly quibbling. See, doc # 1202, p. 38, n. 20. It is the CS who is contacting Bussey via text and voice calls, not vice versa. And those undercover contacts from the CS to Bussey do not establish that Bussey is using his phone to further his involvement regarding target offense. The Magistrate erred in concluding that this misrepresentation was not material.

Bussey, therefore, objects to the Magistrate's conclusions that he has not identified material facts that would undermine the finding of probable cause.

### 7. The September 30, 2019 Call.

On September 30, 2019, the CS called Bussey at the direction of agents, and they spoke for nearly 13 minutes. Doc # 651-1, ¶128. The affidavit describes Bussey's going to the U.S. consulate in Mexico and then concludes that Bussey "explain[ed] that he went to the consulate office in Mexico to meet with individuals

to try to push his fraudulent H-2A petitions through without officials denying visas." *Id.* at ¶129(a). There is nothing in Bussey's excerpted statements that support this conclusion. And other than the allegations in ¶¶41-45, there is nothing in the affidavit about any specific petitions, much less fraudulent ones.

A proper reading of what Bussey says is that he tried to put a face with a name to improve the success of his petitions, which were legally submitted. This is bolstered by a meeting between the CS and Bussey the next day (October 1, 2019), where Bussey told the CS (55:35) about the meeting at the consulate and "sold himself" to the officials by explaining "all the rules and regulations" that he follows.

In fact, there is a memorandum of interview from that September 10, 2019 meeting with Bussey by an Agent with the State Department that memorializes the meeting at the U.S. Consulate in Monterrey, Mexico. Doc # 651-11. That memorandum states that Bussey requested the meeting to discuss the status of several H2 petitions. Bussey discussed his concern over some terminology used (administrative processing) as he was new to the process for H2 visas although he was very familiar with the Foreign Labor Contractor process. Bussey described his work experience with the Georgia Department of Labor. He stated that he was unfamiliar with the recruitment process for workers, and stated when asked that contractors charging workers fees was illegal and that he has never been part of such a process. The consular officer described the administrative process for applications and again asked Bussey about charging workers. Bussey again stated

it was illegal and he had never taken part in doing so. The writer noted that the interview "ended amicably."

The Magistrate views this evidence and concludes that Agent Miranda is offering his subjective belief and that opinions and conclusions of experienced agents is a factor in the probable cause equation. Doc # 1202, p. 40. Respectfully, the Magistrate errs and the citation to *Robinson* proves the point.

In *Robinson*, the agent knew that high-pressure sodium lights were used for indoor marijuana cultivation and that they consume a large amount of electricity and radiate considerable heat. *United States v. Robinson*, 62 F.3d 1325, 1331 (11th Cir. 1995). The court credited the agent's experience regarding those investigative facts and the sound conclusions drawn from those facts.

Here, the only investigative fact known about Bussey's trip to the consulate was that it happened. He speculates that Bussey was taking the trip to "push through fraudulent H2-A petitions." And there is nothing in the contemporaneous interview report to suggest that there was anything untoward about the meeting.

While not mentioned in the affidavit, the CS met Bussey on October 1, 2019, the day after this phone conversation. The CS again got Bussey drunk.

The Magistrate's conclusion that Bussey has not identified material facts is in error as is the conclusion that those facts do not undermine probable cause.

If the Court extracts the misrepresentations and omissions from the affidavit, it is left with a series of unsupported beliefs. The single example of a "fraudulent petition" simply isn't. The CS, who has prior convictions based on

exploitation, is not reliable, and he exploited Bussey (*with the agents' knowledge and consent*) by getting him drunk. The CS did it in two other recorded meetings, and it is telling that the 75-minute August 20 meeting cited in the affidavit contains excerpts beginning at the 41:46-minute mark. Bussey said that he worked alone and got his money from filling out forms, not that other target subjects were, or may be, business partners and that he took money from workers, which is what the affidavit represents. The affidavit describes Bussey as advising the CS to use a "crooked" labor inspector, when Bussey said several times not to use him. As the CS presses Bussey for how to engage in illegal activity at the hotel, Bussey suggests legal solutions, like converting his hotel into a labor camp. The affidavit misrepresents Bussey's visit with the Mexican consulate as an attempt to further a fraudulent scheme, but Bussey himself touted how well the visit had gone because he knew the "rules and regulations" of the H-2A visa program. The affidavit uses the recordings by the CS to link the agent's unsupported beliefs to Bussey, which is why it was crucial that the affidavit not omit or misrepresent key information.

### 8. The Magistrate Did Not Address Bussey's Argument that there was No Probable Cause to Believe his Phone was Used to Conduct Criminal Activity.

The Magistrate did not address Bussey's argument that there was no probable cause to believe that Bussey's phone was being used in criminal activity. The government discovered Bussey's phone number from "labor certification paperwork Bussey had previously submitted during this investigation." Doc # 651-1, ¶122. The only "labor certification paperwork" specifically discussed in the

affidavit (¶¶41-45) does not reflect illegal activity. Every contact during this investigation was initiated, not by Bussey, but by the CS. The CS complained that Bussey never answered his phone. Id. at ¶122.

The affidavit must show that the telephone is routinely relied on to conduct the criminal enterprise under investigation. *United States v. Degaule*, 797 F. Supp. 2d 1332, 1354 (N.D. Ga. 2011). It must contain sufficient information so that a judge could find probable cause to believe that the telephone is being used in an illegal operation. 797 F. Supp. 2d at 1355; *United States v. Domme,* 753 F.2d 950, 954 n. 2 (11th Cir. 1985). Here, there were texts from the CS to Bussey on August 15, 2019 to set up a meeting. *Id.* ¶ 122. The CS called Bussey a few days later in an unmonitored call. *Id.* ¶ 123. A meeting took place the next day between Bussey and the CS. *Id.* ¶ 126. And, then on September 30, 2019, the CS placed a monitored call to Bussey. *Id.* ¶ 128. Those government-initiated calls to Bussey's phone do not establish probable cause that the phone is being used to conduct unlawful activity.

### III.    Necessity

Bussey does not appeal the Magistrate's Report and Recommendation's decision regarding his necessity argument, doc # 1202, p. 42-45, in these objections.

### IV.    Fruit of the Poisonous Tree.

The order authorizing this wiretap led to four subsequent wiretap orders. If Bussey succeeds on this motion, all evidence derived from this wiretap – including

the evidence obtained in the remaining wiretaps – should be suppressed. *See* 18 U.S.C. §2518(10)(a); *Wong Sun v. United States*, 371 U.S. 471 (1963).

WHEREFORE, Mr. Bussey respectfully requests that based on all the reasons and authorities cited above, that this Court grant his Objections and overrule the denial of his Motion to Suppress the Wiretap Evidence.

This the 20th day of February, 2025.

Withers Law Firm PC


*/s/Thomas A. Withers, Esq.*
Attorney Bar Number: 772250
Attorney for Defendant Brett Bussey

8 East Liberty Street
Savannah, Georgia 31401
Telephone: (912) 447-8400
Email: twithers@witherslawfirmpc.com

CERTIFICATE OF SERVICE

The undersigned certifies that I have on this day served all the parties in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this court.

This 20th of February, 2025.

Withers Law Firm PC


*/s/Thomas A. Withers, Esq.*
Attorney Bar Number: 772250
Attorney for Defendant Brett Bussey

8 East Liberty Street
Savannah, Georgia 31401
Telephone: (912) 447-8400
Email: twithers@witherslawfirmpc.com