UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Indictment No: |
| vs. ) | 5:21-cr-009-20 |
| ) | |
| BRETT DONAVAN BUSSEY, ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT BUSSEY'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DENYING HIS MOTION TO SUPPRESS THE MICROSOFT SEARCH WARRANT

Brett Bussey files this, his Objections to the Magistrate Judge's Report and Recommendation Denying his Motion to Suppress the Microsoft Search Warrant, doc # 1218, and shows this Court the following:

### I.     Standard of Review.

A district court considers de novo any objection to a Magistrate Judge's Report and Recommendation. "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3).

The district court conducts a careful and complete review of a Magistrate Judge's Report and Recommendation. *United States v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. Unit B 1982)). This review may take different forms, however, depending on whether there are objections to the Report and Recommendation. The district judge must "make a de novo determination of those portions of the

1

[Report and Recommendation] to which objection is made." 28 U.S.C. § 636(b)(1)(C). After conducting a complete and careful review of the Report and Recommendation, the district judge "may accept, reject, or modify" the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1)(C); *Williams*, 681 F.2d at 732.

## II. Procedural History.

Bussey moved to suppress evidence obtained from the August 14, 2019, search warrant directed to Microsoft for his email address – brett.bussey1201@outlook.com. Doc # 637. Bussey discussed the affidavit's general allegations and the five paragraphs of the lengthy affidavit devoted specifically to him. Doc. # 637, p. 2-5. He then addressed facts that the Homeland Security Investigation agent intentionally or recklessly failed to disclose in the affidavit – things like the difference in the certifications between an employer and an agent, an interview with a "true farm owner" (as the government calls it), and Bussey's remedying a submission after obtaining a Notice of Deficiency. Doc # 637, p. 5-11. Bussey attached documentary support from the government's discovery to his motion. Doc. # 637-1, 637-2, 637-3, 637-4. Bussey then requested a hearing under *Franks v. Delaware*, 438 U.S. 154, 171 (1978), given his "allegations of deliberate falsehood or reckless disregard for the truth" supported by his offer of proof (notably, the documents), pointing out the misrepresentations and omissions in the Microsoft affidavit, and explaining the significance of those misrepresentations and omissions. Doc # 637, p. 11-14.

The government responded that Bussey failed to address his standing to challenge the Microsoft warrant by showing a "subjective expectation of privacy" in his personal email account. Doc # 884, p. 3. The government then focused on the allegations in the warrant and the actions of others, most of whom are not named defendants here. Doc # 884, p. 3-8. (referencing D.H, p. 5-6, S.W., p. 6, A.-M. M., p. 6-7, S.W., p. 7). The government then summarized the specific paragraphs of the affidavit, ¶¶ 89-93, regarding Bussey. Doc # 884, p. 8. Without citing to anything, the government asserted that Bussey "knew some of the loopholes of the program," which it itemized, and then alleged that his "manner and means, at times, mirrored" six other members of the conspiracy, not one of whom are named in the indictment. Doc # 884, p. 8-9. The government failed to address most of Bussey's specific points, ending with an argument that the agents acted in good faith. Doc # 884, p. 9-12.

Bussey replied to the government's response, doc # 936, and in April 2024, a hearing was held on Bussey's motion. Doc # 988, 1133. As part of that motions hearing, the Magistrate held a provisional *Franks* hearing. *Id.*

On February 10, 2025, the Magistrate Judge Recommended that this Court deny Bussey's Motion to Suppress and the request for a *Franks* hearing. Doc # 1218. Bussey filed an Unopposed Motion for Extension of Time in Which to File Objections, doc # 1232, which was granted, doc # 1235, giving him until March 6, 2025, in which to file objections.

These Objections timely follow.

## III. Argument and Citation of Authority.

### A. The Magistrate Judge Erred in Concluding that the Affidavit's Unchallenged Portions Establish Probable Cause.

The Magistrate first analyzed the second *Franks* element – whether the affidavit would still support probable cause when corrected to address the alleged misrepresentations and omissions. Doc # 1218, p. 17. The Magistrate cites the following "unchallenged portions of the affidavit" to conclude the affidavit establishes probable cause.

1. That the affiant stated there was probable cause to believe Bussey committed several target offenses. *Id.* at p. 18.

2. That it is "undisputed" that Bussey submitted 3 petitions that investigators flagged as "potentially" containing fraudulent information. *Id.*

3. That other target subjects used email accounts to submit fraudulent 9142 petitions. *Id.*

4. That DOS rejected 833 visas associated with his petitions because of inaccurate or incomplete information. *Id.*

5. That Bussey submitted the one ETA 9142 application discussed in the affidavit. *Id.* at 19.

6. That the one ETA 9142 was submitted by Bussey's email address. *Id.*

7. That the ETA 9142 listed 224 Meadow Road as a place of employment for the workers, and that property owner never requested H2-A workers. *Id.*

4

### 1. The Probable Cause Standard.

The Fourth Amendment prohibits the issuance of a search warrant in the absence of probable cause to believe that particular items of evidentiary value are located in a specific place. This safeguard is necessary to protect a person's interest in the privacy of his home and personal possessions from unjustified governmental intrusion. *O'Rourke v. Hayes*, 378 F.3d 1201, 1209 (11th Cir. 2004), citing *Stegald v. United States*, 451 U.S. 204, 213 (1981). While the concept of "probable cause" is not susceptible to precise definition, the Supreme Court has held that a finding of probable cause may be premised upon an affidavit of a law enforcement officer if the facts and circumstances alleged establish "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 338 (1983). First, it must be shown that there are reasonable grounds to believe a crime has been committed; second, there must be reliable and trustworthy evidence to show that evidence of the crime is located in a particular place. See *United States v. Martin*, 297 F.3d 1308, 1314-15 (11th Cir. 2002); *United States v. Carlson*, 236 F.Supp.2d 686, 688 (S.D. Tex. 2002). The mere fact that criminal activity may have taken place does not supply the necessary probable cause to, for instance, search a suspect's home for evidence. *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002); *United States v. Glinton*, 154 F.3d 1245, 1257 (11th Cir. 1998).

In deciding whether to sign a search warrant, the issuing judge is simply to make a practical, commonsense decision whether, given all the circumstances set

forth in the affidavit before him there is a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Jiminez,* 224 F.3d 1243, 1248 (11th Cir.2000). Affidavits are not interpreted in a hyper technical manner; a realistic and commonsense approach is used to encourage recourse to the warrant process and to promote deference traditionally given to magistrates in their probable cause determination. *United States v. Miller,* 24 F.3d 1357, 1361 (11th Cir.1994).

### B. The Unchallenged Portions of the Affidavit Do Not Establish Probable Cause.

#### 1. The Affiant's Conclusions in subparagraphs 1 and 2 Above Do not Establish Probable Cause.

The Magistrate erred in taking the affiant's conclusions (that the affiant said there was probable cause to believe that Bussey committed target offenses and that 3 petitions were flagged as "potentially containing fraudulent information") set out in subparagraphs 1 and 2 above, as fact. The Magistrate Judge's use of those two conclusions do not bolster the finding that "unchallenged" portions of the affidavit establish probable cause.

This is so because conclusory allegations of a federal agent without a factual foundation do not support probable cause. *United States v. Lewis*, 81 F.4th 640, 646-47 (6th Cir. 2023). In *Franks*, the Supreme Court made the point that a warrant must contain "particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *United States v. Franks*, 438 U.S. 154, 165 (1978). The *Franks*

6

Court discussed an example—where probable cause was premised on an informant's tip. In that instance, it wasn't sufficient for the agent just to report that he concluded that the informant was reliable. "If an informant's tip is the source of information, the affidavit must recite some of the underlying circumstances from which the officer concluded that the informant . . . was credible or his information reliable." *Id.*

Here, the affiant's belief that there was probable cause to believe Bussey committed target offenses and the affiant's belief that Bussey submitted 3 petitions that were flagged by investigators as potentially containing fraudulent information (without explaining what those petitions say or how they were fraudulent) is the type of conclusory allegation that does not support a finding of probable cause.

### 2. The Affidavit Establishes No Contact Between Bussey and 13 of the Target Subjects.

The Magistrate relies on the fact that the affidavit described how Bussey and 14 other target subjects used email in alleged furtherance of the target offenses. Doc # 1218, p. 18. But the affidavit establishes no connection between any of the other target subjects and Bussey, save one, Inez Strickland. And that "fact" does not advance the probable cause analysis for the affiant twice asserts that "agents believe" that Bussey and Strickland "may be [] business partner[s]." Doc # 637-1, ¶¶ 89, 100. That belief is supported by no facts tying Bussey to Strickland. This is again, the type of conclusory averment that does not support probable cause.

There is no fact in the affidavit alleging a connection between Bussey and any of the 13 other target subjects. Thus, the recitation of other target subjects unconnected to Bussey does not establish probable cause.

### 3. The 833 Refused Visas.

As for the Magistrate's reliance on the DOS refusal of 833 visas – the affiant does not suggest that is an indicia of fraud. In fact, the affiant is careful to distinguish only that – those 833 visas were refused because of "inaccurate or incomplete information." *Id.* at ¶ 90.

As shown below, the Notice of Deficiency process outlined at 20 C.F.R. 655.141 (a) contemplates the return of applications with errors or inaccuracies. And the single 9142 identified in the affidavit sought certification for 250 workers, doc # 637-2, p. 22, almost 30 percent of the total refused visas.

### 4. The Remaining "Undisputed Facts" Do Not Establish Probable Cause.

The remaining undisputed facts are that Bussey submitted the 9142 in question, that it was submitted from Bussey's email address and that it listed 224 Meadow Road as a place of employment when the property owner at that address did not request H2-A workers.

Those facts standing alone do not support a finding that there is a fair probability that evidence of a crime will be found on Bussey's email.

### C. The Magistrate Erred in Concluding that the Agent's Reckless Misrepresentations and Omissions Do Not Undermine Probable Cause.

#### 1. The ETA 9142 Certification.

The agent summarizes in his affidavit the H-2A program, including Form ETA 9142. *Id.* at ¶¶7-24. Despite claiming expertise in investigating similar matters, the affiant misrepresents the signing burden of the agent in paragraph 18, omits the relative responsibilities of the employer and the agent in the provision of information, and omits the fact that Notices of Deficiency are part of the application process.

The affidavit claims that the agent's certification on a Form 9142 contains a "penalty of perjury" clause. Doc # 637-1, ¶18. It does not. The Magistrate acknowledges that Bussey has identified a misrepresentation, doc # 1218, p. 21, but erroneously concludes that because Bussey certifies the information contained in the application is true and correct, that even if corrected, the misrepresentation would not undermine probable cause. *Id.* p. 21-22.

For several reasons, this analysis is error. First, the Magistrate doesn't address Bussey's argument that it is Form 9142A-Appendix, not ETA Form 9142A that contains the penalty of perjury clause. Doc # 637, p. 6-9, 12-14. The two forms at play are significant. The Form 9142A contains no certification clause, no perjury clause. Yet the affidavit omits and the Magistrate doesn't address the omission that "Employers use *Appendix A* of the Form ETA-9142A to attest that they will comply

9

with all of the terms, conditions, and obligations of the H-2A program." Fed. Reg., Vol. 84, No. 104 (May 30, 2019) at 25075.

Second, the employer's Declaration on Appendix A, occupies almost three pages, and sets out in detail the responsibilities between the employer and agent. Doc # 637- 2, p. 33-35.  It is the employer, not the agent, who is responsible for the accuracy of the information in 9142A-Appendix:

> I hereby acknowledge that the agent. . . identified in section E of the Form ETA-9142A and section A above is authorized to represent me for the purpose of labor certification and, by virtue of my signature in Block 5 below, **I take full responsibility for the accuracy of any representations made by my agent or attorney.**

*Id.* p. 35. (emphasis added).[1]

Third, it is the employer, not the agent, who signs the form under penalty of perjury:

> I declare under penalty of perjury that I have read and reviewed the application and that to the best of my knowledge the information contained therein is true and accurate. I understand that to knowingly furnish false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a felony punishable by a $250,000 fine or 5 years in the Federal penitentiary or both (18 U.S.C. § 1001).

*Id.*

In factual contrast, the agent's certification is a single paragraph that states that:

---

[1] A separate form – USCIS Form I-129 – does require an agent to sign under penalty of perjury but attests that the employer has reviewed the completed petition and informed the agent that all of the information on the form and in supporting documents is complete, true, and accurate. *See*, doc # 637-2, p. 10.

10

> I hereby certify that I am an employee, or hired by, the employer listed in Section C of the Form ETA-9142A, and that I have been designated by the employer to act on its behalf in connection with this application . . . I have attached a Letter of Representation from the employer. I also certify that to the best of my knowledge the information contained herein is true and correct. I understand that to knowingly furnish false information in the preparation of this form and any supplement hereto or to aid, abet, or counsel another to do so is a felony punishable by a $250,000 fine or 5 years in a Federal penitentiary or both (18 U.S.C. § 1001).

*Id.* at 33 at ¶ A.

The Magistrate reasons that the distinction between the employer's certification and the declaration of the agent doesn't diminish or eliminate the agent's role. Doc # 1218, p. 21. Yet combining the factual misrepresentations and omissions above demonstrate that the agent was reckless in his factual recitation, and if corrected, those facts and omissions would defeat the showing of probable cause.

### 2. The 224 Meadow Road Location.

#### (a)   Failure to Describe Other Worksites

The affiant mentions one Bussey 9142, which listed 224 Meadow Rd, Alma, Georgia as one of the places of work. Doc # 637-1, ¶91. Although somewhat confusingly written, the affidavit states that a letter submitted on behalf of the grower showed a fixed site address as that listed in the ETA 9142. *Id.* The affidavit asserts that grower Burnam signed and dated a letter November 14, 2018. *Id.* The affiant states that agents went to 224 Meadow Road, and interviewed the owner who said she did not request any workers. Doc # 651-1, ¶45.

Burnam's "letter," is in fact a fully executed work contract agreement between the Farm Labor Contractor (the employer) and Burnam. See, doc # 637-4, p. 1-3. It is signed by both Burnam and the FLC. It is not signed by Bussey.

More importantly, omitted from the affidavit is that 224 Meadow Road was only one of 21 sites where H2A workers would be working. Doc # 637-2, p. 25, 31 at ¶ F.c.7a and Addendum, ¶ F.c.7. The Magistrate discards this omission by stating that at most disclosure would have shown that there were a number of work sites, at least one of which was "suspicious." Doc # 1202, p. 26.

Probable cause, though, demands more than a mere suspicion, rather, it requires a fair probability that criminal activity will be found. *United States v. Pulido-Tejedo*, No. 4:07-cr-037, 2007 WL 1812654, at *2 (S.D. Ga. June 18, 2007), *report and recommendation adopted*, No. 407-cr-037, 2007 WL 2226057 (S.D. Ga. July 30, 2007); *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990).

Bussey understands that it is his burden under *Franks* to show that an alleged omission would have prevented probable cause. Doc # 1218, p. 8-9. A factual showing that a single property out of the 21 submitted erodes probable cause.

### (b) The Discrepancy Between the GPS Coordinates and 224 Meadows Road

The Burnam contract with N.A., lists 9 worksite field locations for workers. Location number 1 has GPS coordinates of 31.532389, -82.482599, and an address of 224 Meadow Road.

At the time of briefing on this matter, in July 2023, inserting the GPS coordinates provided by Burnam produced a physical address of 246 Meadows Road, Alma. A Google Maps search no longer produces that address, but it does produce a pin drop location, which appears to be directly across the street from 224 Meadows Road. The entire kerfuffle here then appears to be a mistake based upon someone inserting the GPS coordinates into Google Maps.



The Magistrate Judge states that Bussey has provided no evidence that GPS coordinates that almost lineup with the closest street address was a mistake. Doc # 1218, p. 24. Again, Bussey accepts he has the burden to demonstrate misrepresentations and omissions, and he has demonstrated that inserting the GPS coordinates for worksite 1, provided by Burnam into Google Maps produces the address of 246 Meadow Road. That is proof regularly accepted by the courts, and government experts regularly rely on Google Maps. *United States v. Duggar*, 2022 WL 1647334, (May 24, 2022) (government's computer expert used Google

Maps to testify about GPS coordinate locations); *Pahls v. Thomas*, 718 F.3d 1210, 1216 (10th Cir. 2013) (most courts are willing to take judicial notice of geographical facts and distances from private commercial websites such as MapQuest, Google Maps, and Google Earth); *United States v. McElroy-Carlos*, No. CR 2022-0011, 2024 WL 3519141, at *3, n. 2 (D.V.I. July 24, 2024).

The Magistrate suggests that "if the GPS coordinates were inconsistent with the street address, that inconsistency would have made the application more suspicious, not less." Doc # 1218, p. 24-25. That conclusion rejects the proof that inserting the GPS coordinates supplied by Burnam returned a non-existent street address, but whose pin location is directly across the street from 224 Meadow Road. While that street address may not have requested workers, Mr. Burnam and the FLC were requesting workers for the GPS coordinates across the street. The distance between 224 and the GPS coordinates in the map above is no indicia of fraud. The Magistrate, therefore, errs in concluding that the omitted information would not undermine probable cause.

### (c) Failure to Describe Burnam's Letter and Investigator Contacts with Burnam

The affidavit fails to describe Burnam's contract with the employer and fails to disclose that in April 2019, investigators contacted Burnam. A copy of that log entry is found at doc # 637- 3. It is related to the application attached as Exhibit 2 as it bears the same receipt number – WAC1914050982H2A. Burnam told the reporting agents about his arrangements with the employer listed on the ETA-9142

form. *Id.* p. 2. Burnam reported that the employer was one of two contractors he hired to cover labor needs for 400 acres of blueberry crops spread across 8 farms in three Georgia counties; that the employer provided and housed the workers. *Id.* He relayed no conversations with Bussey.

As noted above, Burnam's "letter," is in fact a fully executed work contract agreement between the Farm Labor Contractor (the employer) and Burnam. See, doc # 637-4, p. 3, It is signed by both Burnam and the FLC, not by Bussey. The Magistrate erroneously concludes that the contract does not aid Bussey's argument. Doc # 1218, p. 26, n. 13. In fact, the contract between the FLC and Burnam demonstrates that the GPS coordinates were provided by Burnam to the FLC because the investigator's notes do not show any contact between Burnam and Bussey.

The facts not disclosed in the affidavit demonstrate that the contract was between the employer and Burnam. Not Bussey. And the investigator's notes do not mention any contact between Bussey and Burnam. The investigator's notes of his conversation with Burnam do not mention Bussey at all. The contact was made in April 2019, 4 months before the Microsoft search warrant affidavit.

Under *Franks,* a defendant may challenge the veracity of an affidavit in support of a search warrant if he makes a "substantial preliminary showing" that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or

omission was essential to the finding of probable cause. *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006).

Bussey met his burden of showing that the misrepresentation and omissions were recklessly made, and that absent those misrepresentations and omissions probable cause would have been lacking. The Magistrate erred in concluding otherwise.

### 3. The NOD

The affiant claimed that NPC emailed Bussey a Notice of Deficiency ("NOD") letter about the single petition related to Bussey because the 9142 failed to provide documentation related to worker transportation, an original surety bond, and a current hotel inspection. Doc # 637-1, ¶92. The agent then states that Bussey responded via email that "included various documents . . ." *Id.*

The Magistrate states that the Notice of Deficiency is not a fact. Doc # 1218, p. 27. Respectfully, that is error. The affiant touts his experience as an agent, notes his "consular and immigration training," and discusses ETA 9142 procedures, in part. Doc # 637-1, at ¶¶7, 11-18. Despite that training and experience, he wrongly alleges that Bussey signed the petition under penalty of perjury. That is a fact. The 9142 states that in its introductory language:

> . . .In accordance with Federal Regulations, incomplete or obviously inaccurate applications will not be certified by the Department of Labor . . .

Doc # 637-2, p 23. That language contained in the introduction to the petition is a fact.

The Magistrate states that Bussey is arguing that the affidavit should have included a "favorable characterization of the NOD process" and that Bussey has not shown that NOD's are standard practice. Doc # 1218, p. 27. As to the favorable characterization issue - Bussey does not contend that the affiant must favorably characterize a regulatory scheme. But an agent who claims an expertise in the regulations and the documents related to that process, should truthfully state what the documents say, not omit favorable, material facts, and accurately describe those documents. Here, the agent made misrepresentations or omissions about Bussey in obtaining a search warrant by suggesting that the sending of an NOD is a marker of fraud. It is not. And although the agent states that Bussey sent responsive documents, he omits the fact as to whether those documents cured the petition.

As for Bussey's failure to show that NODs are standard practice, or how they are applied in practice, Bussey correctly cites the applicable regulation. Doc # 637, p. 10. The regulatory scheme set out in the Code of Federal Regulations accurately describes the process. If a Form 9142 is "incomplete, contains errors or inaccuracies, or does not meet the requirements set forth in this subpart," the agency will notify an employer within 7 business days of receipt and inform the employer of deficiencies via a Notice of Deficiency. *See* 20 C.F.R. §655.31.

In rejecting Bussey's argument that these omissions impact the probable cause analysis, the Magistrate again states the agent's conclusion that "Bussey has filed three fraudulent petitions" as fact. Doc # 1218, p. 27. As discussed above, the

17

"three fraudulent petitions" is the agent's conclusion, not fact, and therefore cannot provide probable cause. *Franks*, 438 U.S. at 165.

And as discussed above, the burden is on the employer – not the agent – to certify the accuracy of ETA Form 9142. There is nothing unusual or illegal about the NOD process - it is what the documents and regulations provide.

The Magistrate Judge's conclusion that the agent's omissions, if corrected, would not impact the probable cause determination is, therefore, error.

Finally, the Magistrate erroneously concludes that the agent's affidavit would still support probable cause because in part the affidavit shows that Bussey filed petitions by email that the agents believed were fraudulent. Doc # 1218, p. 29. As we have demonstrated above that belief, a conclusion, is not a fact that supports a finding a probable cause. And, that the "suspicious aspects of Bussey's petitions," *id.*, were nearly identical to other petitions to members of an organization not shown to be related to Bussey in any fashion, save for conjecture about Strickland, does not demonstrate probable cause, which is a standard that demands more than a mere suspicion, rather, it requires a fair probability that criminal activity will be found. *United States v. Pulido-Tejedo*, No. 4:07-cr-037, 2007 WL 1812654, at *2 (S.D. Ga. June 18, 2007), *report and recommendation adopted*, No. 407-cr-037, 2007 WL 2226057 (S.D. Ga. July 30, 2007); *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990).

WHEREFORE, Mr. Bussey respectfully requests that based on all the reasons and authorities cited above, that this Court grant his Objections and overrule the denial of his Motion to Suppress the Microsoft Search Warrant.

This the 5th day of March, 2025.

                                              Withers Law Firm PC

                                              */s/Thomas A. Withers, Esq.*
                                              Attorney Bar Number: 772250
                                              Attorney for Defendant Brett Bussey

8 East Liberty Street
Savannah, Georgia 31401
Telephone: (912) 447-8400
Email: twithers@witherslawfirmpc.com

## CERTIFICATE OF SERVICE

The undersigned certifies that I have on this day served all the parties in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this court.

This 5th of March, 2025.

                                          Withers Law Firm PC

                                          */s/Thomas A. Withers, Esq.*
                                          Attorney Bar Number: 772250
                                          Attorney for Defendant Brett Bussey

8 East Liberty Street
Savannah, Georgia 31401
Telephone: (912) 447-8400
Email: twithers@witherslawfirmpc.com