# In the United States District Court for the Southern District of Georgia Waycross Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>BRETT DONAVAN BUSSEY,<br><br>Defendant. | 5:21-cr-9-20 |

## ORDER

Defendant Brett Bussey moves to suppress evidence from a November 16, 2021 search of 410 W. 6th Street, Tifton, Georgia. Dkt. No. 694. The Magistrate Judge issued a Report and Recommendation that the Court deny Bussey's Motion. Dkt. No. 1251. Bussey filed objections to the Magistrate Judge's Report and Recommendation. Dkt. No. 1264. After conducting an independent and de novo review of the entire record in this matter, the Court **CONCURS** with the Magistrate Judge's Report and Recommendation, **ADOPTS** the Report and Recommendation as the opinion of the Court, and **OVERRULES** Bussey's Objections.

## BACKGROUND

The Government alleges in this case that a Transnational Criminal Organization ("TCO") illegally used the H-2A visa program for non-immigrant workers. The Government alleges that TCO members used the program to "smuggle foreign nationals . . . [and] make

money by exploiting these foreign workers and then laundering the illegal proceeds." Dkt. No. 1012 at 2.

On November 16, 2021, after the Indictment was returned, the Government applied for a warrant to search 410 West 6th Street, Tifton, Georgia. Dkt. No. 886-1. The warrant application sought evidence of violations of 18 U.S.C. §§ 1349, 1594, and 1956(h) (the "Target Offenses"). Id. at 2. The Government provided an affidavit in support of its application. Dkt. No. 694-3. The Government used the affidavit in support of several related warrant applications and referred to 410 West 6th Street as "Target Location 12." Id. ¶ 217. The affidavit stated that Target Location 12 was Bussey's residential address. Id. The Honorable Charles H. Weigle, United States Magistrate Judge, Middle District of Georgia, authorized the warrant. Dkt. No. 886-4.

In his Motion to Suppress, Bussey argues that the affidavit supporting the warrant application contained a series of misrepresentations and omissions. Dkt. No. 694 at 8. Bussey argues that without these misrepresentations and omissions the affidavit did not establish probable cause to grant the application. Id. at 19-20. Bussey argues these misrepresentations and omissions were reckless, and he requests a Franks hearing.[1]

---

[1] In the Motion, Bussey also argues that the warrant did not incorporate supporting documentation and the warrant application and the warrant as authorized were not sufficiently particular. Dkt. No. 694 at 3-8. In the Report and Recommendation, the Magistrate Judge rejects these arguments. Bussey does not object to the Magistrate Judge's rejection

The Magistrate Judge issued a Report, recommending that the Court deny Bussey's Motion to Suppress and his request for a Franks hearing for several reasons. Dkt. No. 1251. The Magistrate Judge concludes that even if the alleged misrepresentations and omissions Bussey cited were removed, the affidavit would still support a finding of probable cause. Id. at 35-37. The Magistrate Judge examines each of the purported misrepresentations and omissions. The Magistrate Judge concludes that Bussey did not make a substantial showing that any of the alleged misrepresentations or omissions undermined probable cause. Id. at 37-44.

In his Objections, Bussey argues that the Magistrate Judge errs in two ways. First, Bussey argues that the Magistrate Judge incorrectly concludes that the unchallenged portions of the affidavit supported probable cause to authorize the warrant. Dkt. No. 1264 at 6-10. Bussey points to portions of the affidavit that the Magistrate Judge identified as "unchallenged." Bussey argues those portions of the affidavit are insufficient to establish probable cause. Bussey also contends some of these portions are merely the affiant's unsupported conclusions, and Bussey contends some of the portions actually are challenged. Id. Bussey also argues that the affidavit's misrepresentations and

---

of these arguments. I concur with and adopt the Magistrate Judge's rejection of these arguments.

3

omissions did, in fact, undermine probable cause, contrary to the Magistrate Judge's recommendation. Id. at 10-17.

## DISCUSSION

### I.  The Affidavit's Unchallenged Portions

In his Objections, Bussey challenges the Magistrate Judge's conclusion that even if all challenged portions of the affidavit were removed, the affidavit's unchallenged portions still established probable cause. Bussey cites Franks v. Delaware for the proposition that "a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." 438 U.S. 154, 165. (1978). Bussey argues that the unchallenged portions of the affidavit fail to meet this standard in three ways. First, Bussey argues that some portions do not support probable cause at all. Second, Bussey disputes the Magistrate Judge's conclusion that certain portions of the affidavit are uncontested. Third, Bussey acknowledges that some portions do support likelihood to believe evidence of a crime would be found at Target Location 12 but not enough to constitute probable cause. The Court will address each category of objections in turn.

First, Bussey argues that several uncontested portions of the affidavit do not support probable cause at all. These portions are as follows. A federal grand jury returned an Indictment

4

against Bussey and other Target Subjects for the Target Offenses. Dkt. No. 694-3 ¶ 30. Target Subject Linda Jean Facundo, who was also named in the Indictment, resided at Bussey's residence with him. Id. ¶ 217. Bussey worked with several other Target Subjects in the H-2A visa process. Id. ¶¶ 43, 44, 45, 46, 47, 51, 52, 54, 57, 60, 68. Defendant Juana Carrillo paid Bussey to file visa petitions. Id. ¶¶ 199-200. Eight of Bussey's petitions were flagged for fraud. Id. ¶ 222. The Department of State has refused at least 833 visas associated with Bussey's petitions due to inaccurate or incomplete information. Id. Bussey argues that none of these statements from the affidavit support probable cause because they are either "conclusory characterizations" or simply do "not contribute to the probable cause determination." Dkt. No. 1264 at 8-9.

An affidavit supporting a search warrant "must contain sufficient information to conclude that a fair probability existed that seizable evidence would be found in the place sought to be searched." United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002). The issuing court's task is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). In addition, "the duty of a reviewing court is simply

5

to ensure that the magistrate had a substantial basis for concluding that probable cause existed." Id. at 238-39 (citation and punctuation omitted). In the context of a residential search warrant, the affidavit "should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." United States v. Kapordelis, 569 F.3d 1291, 1310 (11th Cir. 2009) (punctuation omitted).

Bussey's argument that the uncontested portions of the affidavit do not contribute at all to probable cause is unconvincing. The portions of the affidavit that Bussey cites are not mere conclusions, unsupported by any evidence. These portions are sworn factual allegations that contribute to a finding of probable cause. The affiant provided a detailed recitation of facts, supported by a variety of sources. Dkt. No. 694-3. As to Bussey, the affiant stated, "[A]gents determined that Brett Bussey submitted at least eight petitions with fraudulent information. In addition, DOS has refused 833 visas associated with Brett Bussey's Petitions because of inaccurate or incomplete information." Id. ¶ 222. The affiant explained that agents "attempted to verify information in the labor certification application, Petitions and supporting documentation." Id. ¶ 220. The affidavit also linked Bussey to several Target Subjects. Id. ¶¶ 43, 44, 45, 46, 47, 51, 52, 54, 57, 60, 68. These are specific

6

factual allegations that support a finding of probable cause, not unsupported conclusions.

In addition to being factually supported, these uncontested portions of the affidavit meaningfully contribute to probable cause. These facts, when considered together, show that Bussey lived at Target Location 12 with another Target Subject (and co-Defendant), that he filed H-2A visa petitions from Target Location 12 that agents found to be fraudulent, and that he worked with several other Target Subjects to file fraudulent petitions.

Bussey argues that the return of an indictment cannot support probable cause to authorize a search warrant. Even accepting this proposition, the issuance of the Indictment in this case was not the only fact offered in support of probable cause—the Indictment was just one of many facts. Probable cause for a search warrant is based on the "totality of the circumstances." United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999). The fact that two residents of Target Location 12 were indicted for the same offenses certainly contributes to a finding of probable cause. And the issuing Magistrate Judge was entitled to rely on that fact in assessing probable cause when considering the totality of the circumstances.

Bussey also argues that the charges against Facundo were later dismissed, which, ostensibly, diminishes the importance of the fact that she was charged in the same case and resided with Bussey

7

at Target Location 12. This argument is unconvincing. "As long as probable cause existed to search the entire area described in the warrant . . . when the warrant issued, the warrant is valid." United States v. Schwinn, 376 F. App'x 974, 980 (11th Cir. 2010). Bussey's allegation that Facundo was dismissed from the case after the warrant was issued does not impact whether probable cause existed at the time the warrant was issued. At the time the issuing Magistrate Judge considered the warrant application, Facundo was a co-Defendant in the case. The affidavit explained that she resided at Target Location 12 with Bussey, both at the time of the alleged conduct and at the time of warrant application. These facts support the conclusion that there was probable cause to believe that evidence of a crime would be found at Target Location 12.

Bussey argues that payments he received from Defendant Juana Carrillo do not contribute to probable cause because they show only that "Bussey received modest payment to do his job of assisting in the filing of petitions." Dkt. No. 1264 at 8. However, "innocent behavior frequently will provide the basis for a showing of probable cause because such a showing only requires a probability or substantial chance of criminal activity, not an actual showing of such activity." Gates v. Khokhar, 884 F.3d 1290, 1298 (11th Cir. 2018). Therefore, the fact that another Defendant

charged with filing illegal petitions paid Bussey to file petitions is still relevant to a finding of probable cause.

Bussey argues that the State Department's refusal of visa petitions is not an indication of fraud and that links between Bussey and other Target Subjects are not sufficient to establish probable cause. Dkt. No. 1264 at 9. Bussey's visa refusal argument is largely repetitive of arguments he makes in his brief supporting the Motion to Suppress. See Dkt. No. 694 at 13 (referencing Dkt. No. 637 at 10). A history of visa refusals and prior applications flagged for fraud support probable cause for a search warrant. The Magistrate Judge provided a thorough explanation as to why a pattern of rejected of visa petitions would support probable cause even if that conduct would not, on its own, demonstrate criminality. Dkt. No. 1218 at 27–28. I concur with and adopt the Magistrate Judge's analysis on this point.

Bussey also argues that the Magistrate Judge incorrectly characterizes one portion of the affidavit as uncontested when Bussey did, in fact, challenge that portion of the affidavit. Dkt. No. 1264 at 8. The Magistrate Judge discusses allegations in the affidavit about Bussey's connections with Defendant Juana Carrillo and says those allegations are undisputed. Dkt. No. 1251 at 35. The Magistrate Judge focuses on allegations that Bussey exchanged phone calls with Carrillo regarding H-2A petitions and

9

that Carrillo "was responsible for multiple fraudulent petitions and moved workers illegally." Id. at 35-36.

Bussey argues in his Objections that he does dispute the affidavit's allegations about Carrillo, despite the Magistrate Judge's view that these portions of the affidavit were undisputed. First, Bussey states that he "did address Carrillo and paragraphs 200-207 of the affidavit in his moving papers but referred to Jennifer Rangel by her initials as J.R. since she was unindicted." Dkt. No. 1264 at 8 (referencing Dkt. No. 694 at 10-13). Bussey then states "that [portion of the Motion to Suppress] does contest the factual representations" regarding Bussey's petitions. Id.

The affidavit described the investigation of one particular petition for workers. Dkt. No. 694-3 ¶¶ 201-07 (discussing a petition ending with "2037"). The affidavit described the petition itself, how Defendant Carrillo solicited fraudulent farmer requests for workers, and how she worked with her husband as a crew leader. Id. The affidavit also explained that workers requested under the "2037" petition did not work where they were supposed to work. As to Bussey, the affidavit stated that Carrillo paid Bussey to file the "2037" petition in the name of "Jennifer Rangel," which the affiant characterized as a "nominee name." Id. ¶ 207.

In his Motion, Bussey argues that the affidavit's discussion of the "2037" petition did not identify any criminal action by

Bussey, only that Bussey filed the petition in Rangel's name. Dkt. No. 694 at 19. Thus, Bussey does not dispute the factual allegations in the affidavit about the "2037" petition; he merely argues that the facts were not sufficient to establish probable cause and that other facts should have been included.

Bussey's Objections about the Magistrate Judge's consideration of this portion of the affidavit are difficult to discern. Bussey may be arguing that Juana Carrillo and Jennifer Rangel are the same person. However, elsewhere in Bussey's Objections, he states that "[t]he agent's conclusion that Rangel was a nominee petitioner is fanciful." Dkt. No. 1264 at 12.

In the Objections, Bussey seems focused on whether Carrillo and Jennifer Rangel are the same or different people. Bussey did not take a clear position on that fact in his Motion to Suppress, and the Magistrate Judge determined that the allegation in the affidavit that Rangel was a "nominee" name was undisputed. To the extent Bussey disputes that characterization for the first time in his Objections, it is improper to do so. More importantly, whether Carrillo and Rangel are different people was not central to the probable cause determination. The affidavit laid out several facts demonstrating that the "2037" petition was fraudulent and that Bussey filed that petition for Carrillo, as the Magistrate Judge explains. Bussey's only other arguments about this portion of the affidavit concern the certifications of agents versus employers

11

and the consideration of information obtained through a wiretap. These arguments are not factual disputes. The Magistrate Judge fully considered and rejected these arguments. Ultimately, Bussey has not identified any error by the Magistrate Judge in his consideration of the portion of the affidavit related to Carrillo.

Lastly, Bussey concedes that several undisputed facts in the affidavit "weigh against" him in the probable cause analysis, but he argues that these facts still fall short of showing probable cause. These facts include allegations that Bussey filed two petitions for a tomato farm in Tennessee but agents determined workers would actually harvest marijuana. Bussey also spoke to other Target Subjects about housing H-2A workers in inadequate trailers. Dkt. No. 1264 at 6-10. Each of these facts, as Bussey admits, make it more likely that evidence of a crime would be found at Target Location 12. Furthermore, when viewed in conjunction with the other undisputed facts in the affidavit, the factual allegations in the affidavit provide an ample basis for a finding of probable cause to support the issuance of a warrant. Therefore, I overrule Bussey's Objections to this portion of the Magistrate Judge's Report and Recommendation.

## II. Alleged Misrepresentations and Omissions

Bussey argues that the Magistrate Judge errs by concluding that alleged misrepresentations and omissions in the affidavit did

not materially impact probable cause. The Court will address each of Bussey's claims of error in turn.

### A. The ETA 9142 Certification

The affidavit included a description of Form ETA 9142, which is a temporary employment certification submitted to the Department of Labor. Dkt. No. 694-3 ¶¶ 17–18. The affiant stated that both employers and their agents sign the ETA 9142 under penalty of perjury. Id. ¶ 17. The affiant explained that Bussey, as an agent, submitted an ETA 9142 electronically on January 28, 2019. Id. ¶ 43. Bussey argues in his Motion that the affidavit fails to explain the differences between employers and agents and the different certifications that they sign. Dkt. No. 694 at 11-13.

The Magistrate Judge concludes that Bussey's proposed alterations to the affidavit do not materially impact probable cause. Specifically, the Magistrate Judge explains that, even if the affidavit explained in detail the differences between an employer and an agent, it would not change the fact that Bussey submitted an allegedly fraudulent application from his residence and certified it. Dkt. No. 1251 at 38.

In his Objections, Bussey reiterates his argument that "agents are different from employers and labor contractors." Dkt. No. 1264 at 11. Bussey argues that the affiant's failure to

13

describe the different burdens and responsibilities of employers and agents undermines probable cause.

Bussey's Objections are largely duplicative of the arguments he makes in his Motion, and the Court concurs with the Magistrate Judge's analysis of those arguments. Probable cause to search a residence requires a connection between the defendant and the residence and a connection between the residence and any crime. <u>Kapordelis</u>, 569 F.3d at 1310. The affidavit established that Target Location 12 is Bussey's residence. The affidavit also established that Bussey prepared H-2A petitions and submitted them from Target Location 12 and agents later found these petitions to be fraudulent. Therefore, the affidavit established probable cause that evidence of a crime would be found at Target Location 12. Bussey's status as an agent and the distinction between an agent and an employer do not materially impact that conclusion.

Relatedly, the Magistrate Judge explains that Bussey does not dispute that he prepared petitions on behalf of "Jennifer Rangel," an apparently fictitious name, and this fact supports a finding of probable cause. Dkt. No. 1251 at 39. As noted above, Bussey states in his Objections that "[t]he agent's conclusion that Rangel was a nominee petitioner is fanciful." Dkt. No. 1264 at 12. Bussey explains that Rangel signed the petition, provided a registration certificate, provided an IRS Employer Identification Number, and provided a copy of a signed Agent Agreement. <u>Id.</u>

14

The affidavit stated that the name "Jennifer Rangel" is a "nominee name." Dkt. No. 694-3 ¶ 207. Bussey challenges that characterization for the first time in his Objections. A district court properly may decline to consider an argument raised for the first time in an objection to a Magistrate Judge's Report and Recommendation. Sanders v. Wal-Mart Stores East, LP, 754 F. App'x 935, 936-37 (11th Cir. 2019) (citing Williams v. McNeil, 557 F.3d 1287, 1292 (11th Cir. 2009)). Because Bussey raises this argument for the first time in his Objections, his argument is not responsive to the Magistrate Judge's conclusion. Additionally, whether Rangel was a real or fictitious person is largely immaterial, as it is undisputed that Bussey filed a petition in Rangel's name from Target Location 12 and that petition was later determined to be fraudulent. Bussey's Objection is, therefore, without merit.

**B.   Prior Refused Visas**

The affiant stated that "[t]o date, agents determined that Brett Bussey submitted at least eight Petitions with fraudulent information. In addition, DOS [Department of State] has refused at least 833 visas associated with Brett Bussey's Petitions because of inaccurate or incomplete information." Dkt. No. 694-3 ¶ 222. In his Motion, Bussey argues that refusal of visas "is what happens if one submits inaccurate or incomplete petitions" and this allegation, therefore, does not support probable cause. Dkt. No.

15

694 at 13 (referencing Dkt. No. 637 at 10-11, 13). The Magistrate Judge concludes that refusal of 833 visas showed "a pattern of defects in Bussey's petitions." Dkt. No. 1251 at 40 (referencing Dkt. No. 1218 at 27-28).

Bussey's Objections on this issue are the same as his Objections to the Magistrate Judge's Report recommending the Court deny another of Bussey's motions to suppress. Dkt. No. 1237 at 8, 16-19. The Court concurs with the Magistrate Judge's analysis for the same reasons the Court concurred with the Magistrate Judge's analysis of that motion. See Dkt. No. 1274 at 5, 13-15.

C. The Confidential Source

The affidavit described conversations and meetings between Bussey and a Confidential Source ("CS"). In his Motion, Bussey argues that the affidavit misrepresented the CS's criminal history and omitted important details from the CS's conversations with Bussey. Dkt. No. 694 at 14 (referencing Dkt. No. 651 at 11-19). The Magistrate Judge concludes that the affidavit sufficiently described the CS's criminal history. Dkt. No. 1251 at 40 (referencing Dkt. No. 1202 at 31-32). The Magistrate Judge also concludes that any omissions or misrepresentations in the affidavit's description of Bussey's conversations with the CS were not material to a finding of probable cause. Id. at 41 (referencing Dkt. No. 1202 at 32-42).

Bussey's Objections on this issue are the same as his Objections to the Magistrate Judge's Report recommending the Court deny another of Bussey's motions to suppress. Dkt. No. 1231 at 8, 16-26. The Court concurs with the Magistrate Judge's analysis for the same reasons the Court concurred with the Magistrate Judge's analysis of that motion. See Dkt. No. 1269 at 14-23.

D.   **The August 11, 2021 Petition**

The affiant described a petition that Bussey filed for H-2A workers on August 11, 2021. Dkt. No. 694-3 ¶¶ 224-25 (describing petition ending in "5125"). The "5125" petition sought workers for a peanut mill and listed a Super 8 Motel in Douglas, Georgia, as the workers' housing location. Id. ¶ 224. Seventy-three workers entered the United States under this petition. Id. Agents interviewed Archie Miller, the owner of the peanut mill. Id. ¶ 226. Miller stated that no workers ever arrived, that Bussey repeatedly assured him over the phone that workers would arrive, and that Bussey eventually ceased all contact with him. Id. Workers also never arrived at the designated housing location. Id. ¶ 227. The affidavit alleged that the "5125" petition was fraudulent "because workers did not stay or work at the approved locations." Id. ¶ 228.

In the Motion, Bussey argues that the employer, Jennifer Rangel, addressed these deficiencies through a letter that the affiant should have disclosed. Dkt. No. 694 at 14-18. That letter

17

would have shown that Rangel wanted the peanut mill removed from the application and that was why no workers ever arrived at the mill. Id. Bussey also argues that any problems with the application were Rangel's responsibility, not his. Id. at 17–18.

The Magistrate Judge agrees with Bussey that the affiant failed to describe the employer's letter addressing the deficiencies. The Magistrate Judge concludes, however, that the omission was not material. The Magistrate Judge explains that, even if the letter had been described in the affidavit, the circumstances surrounding the August 11, 2021 petition support probable cause. Dkt. No. 1251 at 41–42.

The Court concurs with the Magistrate Judge's analysis. Even if the affidavit included the Rangel letter, the affidavit's description of the application would still support probable cause. Archie Miller, the owner of the peanut mill, stated that Bussey encouraged him to use the H-2A program, that he contracted with Bussey to obtain H-2A workers, and that Bussey repeatedly told him that workers were coming when no workers ever arrived. Bussey eventually stopped responding to Miller's inquiries about the workers altogether. Dkt. No. 694-3 ¶ 226. In addition, Bussey does not dispute that no workers ever stayed at the Super 8 Motel listed on the application, even though 73 workers entered the United States based on that same application. These circumstances strongly suggest serious problems with the petition. The

18

affidavit's allegations regarding Archie Miller also describe Bussey's direct involvement in the petition. Therefore, even if the affidavit described the Rangel letter, the circumstances surrounding the August 11, 2021 petition would support probable cause that evidence of a crime would be found at Bussey's residence.

## CONCLUSION

For these reasons, and after conducting an independent and de novo review of the entire record in this matter, the Court **CONCURS** with the Magistrate Judge's Report and Recommendation, **ADOPTS** the Report and Recommendation as the opinion of the Court, and **OVERRULES** Bussey's Objections.

**SO ORDERED**, this 27 day of May, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA